STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. JOHN CERBO AND JOHN BENEVENTO, DEFENDANTS-APPELLANTS.

Argued September 26, 1978—Decided February 2, 1979.

596

*Ms. Susan Slovak,* Assistant Deputy Public Defender, argued the cause for appellants (*Mr. Stanley C. Van Ness,* Public Defender, attorney).

*Mr. William F. Lamb,* Deputy Attorney General, argued the cause for respondent (*Mr. John J. Degnan,* Attorney General of New Jersey, attorney).

The opinion of the court was delivered by

HANDLER, J. This case raises the question of whether defendants are entitled to post-conviction relief under *R.* 3:22–4 based upon a violation by the State of the sealing requirements of the New Jersey Wiretapping and Electronic Surveillance Control Act, *N. J. S. A.* 2A:156A–1 *et seq.*

On March 14, 1973, defendants John Cerbo and John Benevento, and another defendant Michael Centrone, who is not involved in this appeal, were indicted by a Bergen County Grand Jury on multiple counts of bookmaking in violation of *N. J. S. A.* 2A:112–3 and for conspiracy to violate gambling laws in violation of *N. J. S. A.* 2A:98–1 and 2. The evidence which led to their convictions was obtained through a court authorized wiretap placed upon the home telephone of defendant Centrone pursuant to the New Jersey Wiretapping and Electronic Surveillance Control Act, *N. J. S. A.* 2A:156A–1, *et seq.* (Wiretap Act).

The procedural history of this case is rather convoluted. Prior to trial, defendants Cerbo and Benevento moved unsuccessfully to suppress the evidence obtained from the wiretap. The motion was based upon an asserted violation of *N. J. S. A.* 2A:156A–14, which requires the transfer and sealing of tapes by the issuing judge immediately upon the completion of the wiretap. Following a long jury trial, defendants were found guilty on all counts. A subsequent motion for a new trial was denied and on July 19, 1974,

defendants Cerbo and Benevento were each sentenced to the State Prison for terms aggregating two to four years and fines totalling $2,000. An appeal was taken but defendants neglected at that time to raise the denial of their pretrial motion to suppress the wiretap evidence. The convictions and sentences were affirmed in a reported opinion, *State v. Benevento,* 138 *N. J. Super.* 211 (App. Div. 1975). Defendants' petition for certification was denied on April 1, 1976. *State v. Cerbo,* 70 *N. J.* 276 (1976).

On April 28, 1976, defendants filed applications for *habeas corpus* relief in the United States District Court for the District of New Jersey. That court, in an unreported opinion, dismissed defendants' applications on the ground that they had not exhausted their State remedies in view of the availability of a petition for post-conviction relief under *R.* 3:22–4. During the pendency of the *habeas corpus* applications, defendants moved in the State court for a reduction of their sentences, as a result of which Benevento's sentence was reduced to a term of one to two years but Cerbo's was not. On June 10, 1977, the Appellate Division, in an unreported opinion, affirmed the denial of defendant Cerbo's motion for a reduction of sentence and this Court denied his *pro se* petition for certification on September 27, 1977. 75 *N. J.* 531 (1977).

Following the dismissal of their *habeas corpus* applications in the federal district court, defendants applied to the trial court for post-conviction relief under *R.* 3:22–4. These applications were denied on September 23, 1976 and defendants were ordered to begin serving their respective sentences in State Prison. A notice of appeal from this denial of post-conviction relief was filed by defendant Cerbo on October 18, 1976 and later amended to include defendant Benevento. On July 25, 1977, the Appellate Division, in a reported opinion, affirmed the denial of post-conviction relief. *State v. Cerbo,* 152 *N. J. Super.* 30 (1977). There being a dissent, a notice of appeal as of right was filed with this Court on September 8, 1977 under *R.* 2:2–1(a)(2).

We affirm the judgment of the Appellate Division sustaining the denial of defendants' petitions for post-conviction relief. The grounds advanced by defendants for post-conviction relief were not previously raised in their initial appeal from their judgments of conviction. There appears no basis for finding that these grounds "could not reasonably have been raised" before or that the denial of relief on such grounds would result in "fundamental injustice" or a deprivation of constitutional rights. *R.* 3:22–4. Post-conviction relief was therefore properly withheld.

We do not, however, subscribe to the conclusions of the majority of the Appellate Division that the provisions of *N. J. S. A.* 2A:156A–14 for the transfer and sealing of a completed wiretap tape were ministerial and that the failure of the investigating police officers to have turned over the completed wiretap tapes immediately to the issuing judge for such sealing was merely a technical violation of the Wiretap Act which would not justify barring their use as evidence at the criminal trial of defendants. Had defendants raised this issue in their prior appeal from their judgments of conviction, a reversal would have been warranted. On this facet of the case, we endorse generally the reasoning expressed in the dissenting opinion of Judge Antell. Notwithstanding our decision to deny post-conviction relief for the reasons indicated, because of the prominence which the violation of *N. J. S. A.* 2A:156A–14 has assumed in the disposition of the post-conviction appeal, some further comment with respect to this issue and its impact upon defendants' entitlement to post-conviction relief is warranted.

I

The gravamen of the petitions for post-conviction relief and this appeal was the failure of the law enforcement officers who were responsible for effectuating the court authorized wiretap to comply with the statutory requirement that immediately upon the completion of the wiretap the tapes be

transferred to the issuing judge and sealed under his supervision.

*N. J. S. A.* 2A:156A–14 imposes this obligation, *viz*:

Immediately upon the expiration of the order or extensions or renewals thereof, the tapes, wires or other recordings shall be transferred to the judge issuing the order and sealed under his direction. \* \* \* The presence of the seal provided by this section, or satisfactory explanation for its absence, shall be a prerequisite for the disclosure of the contents of any wire or oral communication or evidence derived therefrom, under subsection b of section 17 of this act.

The reference to section 17 of the Wiretap Act, *N. J. S. A.* 2A:156A–17(b), makes it clear that the contents of a wiretap that has been handled in violation of *N. J. S. A.* 2A:156A–14 shall be inadmissible for purposes of evidence at a criminal trial.

█ The State does not dispute that the tape recordings were not immediately sealed upon the expiration of the wiretap. It has been held that a delay in sealing the tapes of a completed wiretap is equivalent to the absence of a seal. *United States. v. Gigante,* 538 *F.* 2d 502, 506 (2 Cir. 1976) .(construing the sealing provision, 18 *U. S. C.* § 2518(8)(a), contained in Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 *U. S. C.* § 2510 *et seq.,* which provision is virtually identical to *N. J. S. A.* 2A:156A–14); *accord, United States v. Ricco,* 566 *F.* 2d 433 (2 Cir. 1977), *cert.* den. 436 *U. S.* 926, 98 *S. Ct.* 2819, 56 *L. Ed.* 2d 768 (1978). Since the delay in sealing is tantamount to the absence of a seal under *N. J. S. A.* 2A:156A–14, the statutory requirement that there be a satisfactory explanation for such "absence" is applicable to the delay in sealing.

█ The State maintains that there was a satisfactory explanation for the delay in this case. Its reasons for the 33-day lag in sealing were its need to make a composite of relevant conversations, the fact that the investigator in charge was involved in other investigations at the time and

the "tremendous" amount of paperwork after the completion of the wiretap. We agree with the reasoning of Judge Antell that these circumstances do not constitute a satisfactory explanation for the tardiness in the sealing of the tapes. 152 *N. J. Super.* at 37–38.

■ The plain and clear language of section 14 of the Wiretap Act requires that if the transfer and sealing requirements are not met, the contents of the wiretap tape and its evidential by-products cannot be used in evidence. The final sentence of *N. J. S. A.* 2A:156A–14 provides that "[t]he presence of the seal provided by this section, [that is, the affixing of the seal immediately upon the expiration of the wiretap order], or a satisfactory explanation for its absence, shall be a prerequisite for the disclosure of the contents of any wire or oral communication * * *." Therefore. *N. J. S. A.* 2A:156A–14 by its terms mandates the barring of admissibility in evidence of the contents of wiretap recordings if they have not been sealed "immediately" and there is no "satisfactory explanation" for the delay. *Cf. N. J. S. A.* 2A:156A–21, as amended *L.* 1975, *c.* 131, § 10 (on a motion to suppress for particular violations of the Wiretap Act, *all* evidence derived from intercepted wire communications shall be suppressed).

It cannot be overstressed that the transfer and sealing requirements of *N. J. S. A.* 2A:156A–14 are an important component of the protective measures governing the conduct of wiretapping under the Wiretap Act. The significance of these particular safeguards is to be appreciated in the broader protective framework structured by the Wiretap Act, which calls for court involvement in and continuing judicial supervision of all aspects of wiretapping and electronic surveillance. *United States v. Marion,* 535 *F.* 2d 697, 698 (2 Cir. 1976) (the federal act, comparable in material respects to the New Jersey Wiretap Act, "ensure[s] careful judicial scrutiny throughout" the interception and use of resultant evidence). Judicial oversight of wiretapping under the Wire-

tap Act attaches from the initiation of a wiretap by court order (*N. J. S. A.* 2A:156A–8 to 12) and continues through every succeeding stage of the life of the wiretap, from its initial implementation and any extensions (*N. J. S. A.* 2A:156A–12), its sealing and custody upon completion (*N. J. S. A.* 2A:156A–14 and 15), pretrial disclosure and other uses of its contents (*N. J. S. A.* 2A:156A–16 and 17), its evidential use at trial (*N. J. S. A.* 2A:156A–17), to its post trial storage, preservation and eventual destruction (*N. J. S. A.* 2A:156A–14 and 15). The transfer and sealing requirements of the Wiretap Act play a "central role in the statutory scheme"; "[t]he immediate sealing and storage of recordings of intercepted conversations, under the supervision of a judge, is an integral part of this statutory scheme * * * 'to insure that accurate records will be kept of intercepted communications' ". *United States v. Gigante, supra* at 505. The authenticity and integrity of the wiretap tapes can be assured only through the tight controls encompassed by the transfer and sealing provisions of the Wiretap Act.

Where a functional safeguard under the statute is a critical part of the protections surrounding a court-authorized electronic surveillance, a failure to abide by such protective measures should impel the relief envisioned by the Legislature. The breach of the statute should itself call into operation the statutory sanctions prescribed therefor. The motives of the law enforcement officers and the presence or absence of any tactical advantages gained by the police or prejudice accruing to defendants should be relatively unimportant in assessing the propriety of statutory relief. *Cf. Id.* That relief, occasioned by the absence of an immediately placed seal on a completed wiretap or a satisfactory explanation for its delay, by the clear terms of *N. J. S. A.* 2A:156A–14 is the nonadmissibility of the contents of the tapes in evidence.

The State raises in this case the identical objection urged before the court in *Gigante*. There, the government, while conceding that the requirements of 18 *U. S. C.* § 2518(8)(a) were not met, argued that suppression was not warranted

since the defendants did not present any evidence of alteration. Rejecting that contention the court stated as follows:

> To demand such an extraordinary showing, however, would vitiate the Congressional purpose in requiring judicial supervision of the sealing process. Tape recorded evidence is uniquely susceptible to manipulation and alteration. Portions of a conversation may be deleted, substituted, or rearranged. Yet, if the editing is skillful, such modifications can rarely, if ever, be detected. The judicial sealing requirement, therefore, provides an external safeguard against tampering with or manipulation of recorded evidence. The sealed tapes become "confidential court records" and cannot be unsealed in the absence of a subsequent order. When these safeguards are compared with the haphazard procedures employed in this case, the wisdom of Congress becomes manifest.
>
> [538 *F.* 2d at 505].

Accordingly, the court held that "the Government's failure to comply with the statutory sealing procedures for recorded wiretap evidence — procedures explicitly made a prerequisite to their admissibility — must result in the exclusion of the recordings from trial." 538 *F.* 2d at 507.

This holding comports with our own expressed view that the Wiretap Act constitutes an "intrusion into individual rights of privacy" and should be strictly interpreted and meticulously enforced. *In re Wire Communication,* 76 *N. J.* 255, 260 (1978). And "[w]hen the federal and state constitutions protect the individual's right of privacy and the Legislature has seen fit to prescribe an all-inclusive safeguard against wiretaps, it is fitting and proper to hold that the prosecutor comply fully with the conditions under which an exception to the general prohibition may be permitted." *Id.* at 261–262.

## II

Defendants are not entitled to post-conviction relief based upon the admission into evidence of the results of the wiretap on the Centrone telephone, notwithstanding the failure of the police to adhere to the requirements of *N. J. S. A.* 2A:156A–14. Other countervailing reasons, firmly founded

in the efficient and fair administration of criminal justice, bring us to this result.

■ Post-conviction relief under *R.* 3 :22–4 is to be accorded only with respect to grounds which "could not reasonably have been raised" in prior proceedings or which would otherwise justify the granting of such relief in order to avoid "fundamental injustice" or the serious impairment of a defendant's constitutional rights.

As noted earlier, defendants had raised the issue of the violation of *N. J. S. A.* 2A:156A–14 by a pretrial motion to suppress, which was denied. Defendants took an appeal but never raised or pursued this ground as a basis for reversal. Clearly, that issue was capable of being raised by defendants on their direct appeal from their judgments of conviction.

■ It is well-settled that post-conviction proceedings are not a substitute for direct appeal. In the absence of the timely raising of an issue available on direct appeal or a constitutional infringement, relief will be granted in such proceedings only in exceptional circumstances involving a showing of fundamental injustice. See, *State v. Gibson,* 68 *N. J.* 499 (1975) ; *State v. Trantino,* 60 *N. J.* 176 (1972) ; *State v. Smith,* 43 *N. J.* 67 (1964), *cert.* den. 379 *U. S.* 1005, 85 *S. Ct.* 731, 13 *L. Ed.* 2d 706 (1965) ; *State v. McNulty,* 84 *N. J. Super.* 30 (App. Div. 1964) ; *State v. Kaiser,* 80 *N. J. Super.* 176 (App. Div. 1963), certif. den. 41 *N. J.* 200, *cert.* den. 376 *U. S.* 950, 84 *S. Ct.* 966, 11 *L. Ed.* 2d 970 (1964). Post-conviction relief focusing upon this ground will not usually be accorded where the defendant's guilt or innocence is not at issue. See, *State v. Kaiser, supra,* 80 *N. J. Super.* at 181–183.

A similar result, the denial of post-conviction relief, was reached by the Second Circuit in *Alfano v. United States,* 555 *F.* 2d 1128 (1977), a wiretap case virtually identical to this one. In *Alfano,* counsel made a pretrial motion to suppress but never directly addressed the government's failure to comply with the statutory immediate sealing require-

ments at trial or on direct appeal. In denying a post-conviction petition based upon the sealing deficiency, the court ruled that the harm visited upon defendant fell well short of the "miscarriage of justice" required in order to grant relief on collateral review. See also *McMillan v. United States*, 558 *F*. 2d 877 (8 Cir. 1977) (sealing error not worthy of collateral relief); *cf. Coco v. United States*, 569 *F*. 2d 367 (5 Cir. 1978) (collateral relief denied where failure to raise sealing deficiency at trial or appeal was a tactical maneuver).

■ Post-conviction relief on constitutional grounds is similarly unavailing. There is some suggestion that defendants' failure timely to raise this issue in the previous appeal was attributable to his appellate counsel and that this dereliction amounted to ineffective representation. The reason for the omission of this issue on the appeal is not explained. The asserted mishandling of defendants' appeal, however, does not, in our estimation, reach the proportions of a breach of any constitutional rights.

The failure of counsel in this case to pursue the issue of the violation of *N. J. S. A.* 2A:156A–14 on direct appeal appears to have been a serious misjudgment primarily in the light of hindsight. Indeed, at the time of that appeal, the leading case dealing with a similar issue, *United States·v. Falcone*, 505 *F*. 2d 478, 484 (3 Cir. 1974), *cert.* den. 420 *U. S*. 955, 95 *S. Ct*. 1339, 43 *L. Ed*. 2d 432 (1975), held that the delay in sealing original tapes for purposes of making duplicates or composites did not call for the suppression of evidence. Moreover, application of wiretap statutes in other jurisdictions was inconsistent and uncertain in this area. *Electronic Surveillance: Report of the National Commission for the Review of Federal and State Laws Relating to Wiretapping and Electronic Surveillance* 99 (1976). Some later cases continue to reflect the view that suppression is not warranted where there has been a failure to seal tapes promptly in the absence of proof of tampering or alteration of tapes or improper motives on the part of the police and

the like. *E. g. United States v. Angelini,* 565 *F.* 2d 469, 472 (7 Cir. 1977), *cert.* den. 435 *U. S.* 923, 98 *S. Ct.* 1487, 55 *L. Ed.* 2d 517 (1978). These experiences suggest that the sealing requirement, while important in terms of the statutory goals of the Wiretap Act and the salutary protections erected by the Legislature for the conduct of wiretapping, may not in a given case bear upon the guilt or innocence of a particular defendant or the fairness of the trial he is accorded. Thus, counsel may have perceived that an appeal based on the violation of *N. J. S. A.* 2A:156A–14 in this case would have been futile. As observed in *Alfano v. United States, supra* at 1131, "Counsel's failure to focus on the delay in the sealing order is at most a classic example of 'ineffectiveness by hindsight' which should not afford a basis for collateral relief. See *e. g.,* Friendly, 'Is Innocence Irrelevant? Collateral Attack on Criminal Judgments', 38 *U. Chi. L. Rev.* 142 (1970)."

██ Post-conviction relief should not be furnished if its sole purpose would be to vindicate a statutory policy, where the statutory violation has not in any way reflected prosecutorial bad faith or insolence in office nor had the slightest impact upon guilt or innocence or wrought a miscarriage of justice for the individual defendant. It is apparent in this case that the statutory violation raised as a ground for post-conviction relief does ont bespeak egregious official misconduct nor does it have any bearing upon defendants' culpability. Since as already noted, the breach of *N. J. S. A.* 2A:156A–14 was not raised on direct appeal, although it reasonably could have been, and no other adequate ground has been shown under *R.* 3:22–4, defendants' applications for post-conviction relief were properly denied.

The judgment of the Appellate Division is affirmed.

*For affirmance*—Chief Justice HUGHES, and Justices MOUNTAIN, CLIFFORD, SCHREIBER and HANDLER—5.

*For reversal*—None.