172 N.J. Super. 388 (1980)
412 A.2d 452
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
STUART BURSTEIN, DEFENDANT-APPELLANT.
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
MATTHEW GREENHAUSE, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued January 28, 1980.
Decided February 29, 1980.
*389 Before Judges ALLCORN, MORGAN and FRANCIS.
*390 Gregory J. Aprile argued the cause for appellant Stuart Burstein (Philip M. Saginario, attorney).
Harvey Weissbard argued the cause for appellant Matthew Greenhause (Isles, Newman & Weissbard, attorneys).
Gage Andretta, Assistant Essex County Prosecutor, argued the cause for respondent (John J. Degnan, Attorney General of New Jersey, attorney; Donald S. Coburn, Prosecutor of Essex County, of counsel).
The opinion of the court was delivered by MORGAN, J.A.D.
Defendants Matthew Greenhause and Stuart Burstein appeal convictions of possession of CDS (marijuana) with intent to distribute (N.J.S.A. 24:21-19(a)(1)) and conspiracy to violate the narcotics laws (N.J.S.A. 24:21-24), on their pleas of guilty entered after denial of their motions to suppress the taped contents of court-ordered intercepted telephone conversations. The issues raised herein include the retroactivity of State v. Cerbo, 78 N.J. 595 (1979), to electronic surveillance occurring before its date of decision, and if applicable, the impact of a suppression order on search warrants and wiretap orders based upon matters uncovered during the allegedly tainted wiretap.
The facts concerning the electronic surveillance, by wiretap of the phones of defendants Greenhause and Burstein, are essentially undisputed and officially documented. On December 2, 1977 an application for an order authorizing a wiretap on the telephone of defendant Greenhause was made to Judge Arthur Blake, Assignment Judge of Essex County. The affidavit submitted therewith, the details of which are irrelevant, sought a 20-day wiretap on a 24-hour-a-day basis. The requested order was issued on December 2, 1977 and authorized the requested 20-day wiretap of Greenhause's telephone with the following findings:
A special need exists to intercept wire communications over said facility on a twenty-four (24) hour basis, whenever it is determined by ... surveillance *391 that said facility is being used by ... Greenhause... and other unidentified persons in furtherance of this illegal conspiracy.
The Greenhause wiretap began on December 2, 1977, the same day as the order authorizing it was issued. On December 7, 1977 another application for a wiretap was made because the monitored conversations suggested that Greenhause was changing his telephone number. The second application was also granted.
On December 21, 1977 the prosecutor's office applied for a ten-day extension of the wiretap order, averring that between December 2 and December 18, 64 "criminal" conversations were intercepted and recorded. Three such "typical" conversations were reproduced in the application. This application also requested a 24-hour-a-day surveillance authorization. The application was granted.
On December 28, 1977, while the Greenhause wiretap was still fully operative under the ten-day extension order, the prosecutor's office applied for and obtained a 20-day, 24-hour-a-day wiretap on defendant Burstein's telephone on the belief, based upon several of the intercepted Greenhause conversations, that Burstein was a CDS supplier of Greenhause.
The Burstein wiretap terminated on January 5, 1978. The Greenhause wiretap terminated on December 31, 1977. On January 5, 1978, the day the Burstein wiretap terminated and approximately five days after termination of the Greenhause wiretap, the prosecutor's office secured warrants, based upon information derived from the wiretaps, authorizing intrusions into and searches of the Greenhause and Burstein residences. As a result of the warrants, CDS and related paraphernalia were found in the residences of both defendants. Greenhause, Burstein and 11 others were arrested.
The Burstein wiretap tapes were presented for sealing to Judge Blake on January 11, 1978, six days after the wiretap on his phone terminated. The Greenhause tapes, however, were *392 not presented to Judge Blake for sealing until January 30, 1978, 30 days after the Greenhause wiretap had been terminated.
The reason given by the State for the delay in presenting the Greenhause tapes was described as follows:
It has been the standard way we seal tapes. Normally we go before the Judge with the paper work needed for sealing the tapes along with the notices of inventory for those individuals who have been identified throughout the course of the electronic surveillance. In this particular case there was a technical problem with the notice of inventory and there was, as I recall, something from the Attorney General which  which changed the format. The notice of inventory and the original notice of inventory that I received had to be sent back and had to be redone. That was not forthcoming. And I waited until that period of time when I decided to wait no longer and bring them before the Judge. And I brought them before the Judge without the notice of inventory which is our normal procedure.
Prior to their trial of charges of possession of marijuana, possession of marijuana with intent to distribute and conspiracy to violate the narcotics laws, both defendants moved to suppress (1) any of their conversations intercepted pursuant to the challenged wiretaps and (2) any evidence obtained as a result of the wiretaps. Both motions were denied. Greenhause and Burstein pleaded guilty, preserving for this appeal the issues related to their unsuccessful motions to suppress.
N.J.S.A. 2A:156A 14 of the New Jersey Wiretapping and Electronic Surveillance Control Act ("Wiretap Act") requires, with respect to intercepted communications, that:
... Immediately upon the expiration of the order or extensions or renewals thereof, the tapes, wires or other recordings shall be transferred to the judge issuing the order and sealed under his direction.... The presence of the seal provided by this, or a satisfactory explanation for its absence, shall be a prerequisite for the disclosure of the contents of any wire or oral communication, or evidence derived therefrom, under subsection b of section 17 of this act.
*393 Central to the issues raised on this appeal is the undisputed fact that the tapes of the Greenhause wiretap were not presented to Judge Blake for sealing until 30 days after their termination. Both defendants contend on appeal that this delay violated statutory mandate and resulted not only in depriving those tapes of all evidential value for trial but in similarly invalidating the resulting search warrants and their fruits and the Burstein wiretap and its fruits.
Consideration of these contentions starts with State v. Cerbo, 78 N.J. 595 (1979), decided after all pertinent events in this matter, which, by way of dictum, emphasized the transfer and sealing requirements of N.J.S.A. 2A:156A 14 as essential components of the protective measures of the Wiretap Act that involve continuing judicial supervision of all aspects of electronic surveillance. Ibid. Quoting with approval from United States v. Gigante, 538 F.2d 502, 505 (2 Cir.1976), the Cerbo court noted that the "immediate sealing and storage of recordings of intercepted conversations, under the supervision of a judge, is an integral part of this statutory scheme * * * [and was intended] `to insure that accurate records will be kept of intercepted communications.'" 78 N.J. at 603.
A delay in sealing, without satisfactory explanation, triggers the statutory sanction of exclusion of the tapes from evidential use without requiring a showing of probable or possible alteration thereto, and regardless of the good or bad faith of law enforcement officers in delaying the sealing of the tapes. Continuing in its statement as to the effect of a sealing violation, Cerbo went on to note that because
... the Wiretap Act constitutes an `intrusion into individual rights of privacy' ... [the act] should be strictly interpreted and meticulously enforced.... And `[w]hen the federal and state constitutions protect the individual's right of privacy and the Legislature has seen fit to prescribe an all-inclusive safeguard against wiretaps, it is fitting and proper to hold that the prosecutor comply fully with the conditions under which an exception to the general prohibitions may be permitted.' [Id. at 604; citation omitted]
*394 The State's contention that the 30-day delay in presenting the Greenhause tapes for sealing is satisfactorily explained, and hence excused, by a newly instituted work procedure which required the completion of newly developed forms is, in light of Cerbo and the reasons rejected therein, clearly without merit.
We similarly reject the State's plea that Cerbo not be retroactively applied to telephone interceptions conducted prior to the date it was decided. The State argues that at the time the Greenhause wiretap terminated it relied upon the determination of the Appellate Division majority in Cerbo[1] and upon United States v. Falcone, 505 F.2d 478 (3 Cir.1974), cert. den. 420 U.S. 955, 95 S.Ct. 1339, 43 L.Ed.2d 432 (1975), that a delay in presenting wiretap tapes for sealing, although improper, would not result in the exclusion of the tapes from evidence in the absence of suggestion that the actual integrity of the tapes had been violated, or that the delay resulted from the State's desire for tactical advantage, or other improper motive. The argument continues that because it failed to foresee Cerbo, that case should not be retroactively applied. We disagree. Indeed, we detect no retroactivity problem here. Although Cerbo was decided after the taping and sealing of the Greenhause wiretap tapes, N.J.S.A. 2A:156A-14, that portion of the Wiretap Act which requires that taped recordings of authorized interceptions be presented to the issuing judge for sealing immediately upon termination of the wiretap was enacted in 1968, well before the events in this case. The State was under no misconception as to what its responsibility was with respect to the tapes under its control once the Greenhause wiretap had terminated. That the State may have hoped that the remedy for a statutory violation would not have been as severe as it turned out to be in Cerbo is entirely irrelevant to a disposition of this case.
*395 Hence, we conclude that the trial judge erred in denying defendants' motions to suppress the Greenhause tapes. It yet remains, however, to consider what evidential by-products of the suppressed materials must also be suppressed. Defendants contend that the order authorizing the Burstein wiretap, obtained December 28, 1977, stemming as it did from the information derived from the suppressed Greenhause tapes, must also be suppressed as being "evidence derived" from suppressed materials. So also, according to defendants, must the fruits of the searches conducted pursuant to warrants issued January 5, 1978 as a result of information obtained through the intercepted conversations from Greenhause's tapped telephone. We must, therefore, consider the reach of an order suppressing tapes of wiretapped conversation.
First resort is to the statute itself. N.J.S.A. 2A:156A 14 makes "presence of the seal provided by this act, or a satisfactory explanation for its absence" a necessary "prerequisite" for disclosure of intercepted communications "under subsection b of section 17 of this act." Subsection (b) of N.J.S.A. 2A:156A-17 refers only to use of intercepted communications as evidence. It provides:
b. Any person who, by any means authorized by this act, has obtained any information concerning any wire or oral communication or evidence derived therefrom intercepted in accordance with the provisions of this act, may disclose the contents of such communications or derivative evidence while giving testimony under oath or affirmation in any criminal proceeding in any court of this or another state or of the United States or before any Federal or State grand jury.
Proper sealing in accordance with § 14 is not, however, made a prerequisite to disclosure by a law enforcement officer "to the extent that such disclosure or use is appropriate to the proper performance of his official duties." N.J.S.A. 2A:156A-17(a). Indeed, § 14 expressly authorizes the duplication of wiretapped tapes for use "pursuant to subsection a of section 17 of this act." Clearly, the Legislature did not envision the seal as a prerequisite *396 to government use of tapes for other than evidential purposes in connection with a criminal proceeding. Cerbo is not to the contrary, limited as it was to the evidential use of the contents of intercepted communications:
... That relief, occasioned by the absence of an immediately placed seal on a completed wiretap or a satisfactory explanation for its delay, by the clear terms of N.J.S.A. 2A:156A-14 is the nonadmissibility of the contents of the tape in evidence. [78 N.J. at 603; emphasis supplied]
Although the issue is novel to New Jersey law, authority from other jurisdictions operating under the same or similar statutory wiretap schemes has given careful attention to this specific problem. In United States v. Fury, 554 F.2d 522, 531-532 (2 Cir.1977), applying New York statutory law, it was held that the contents of conversations intercepted through a court-ordered wiretap could be used to establish probable cause for another wiretap or a search warrant even though the conversations themselves could not be used in evidence because of sealing violations. Legislative history, referred to in Fury, supports this construction.
The Senate Report states as to 18 U.S.C. § 2517(2), the counterpart of CPL § 700.65(2) that the `proposed provision envisions use of the contents of intercepted communications, for example, to establish probable cause for arrest . . [and] probable cause to search....' 1968 U.S.Code Cong. & Admin.News, pp. 2122, 2188. And it states that a seal is `intended to be a prerequisite for use or disclosure under section 2517(3)' (at trial or grand jury proceeding)  the counterpart of CPL 700.65[3], id., at 2194, but does not mention the seal requirement with regard to the first two subdivisions (disclosure to other investigative or law enforcement officer and use in performance of one's duties). [Id. at 532, n. 11]
The New Jersey act, N.J.S.A. 2A:156A 1, like the New York one, is modeled on the federal act, and plainly the policy considerations underlying the sealing requirements of the federal act and remedy for violations thereof are the same as those *397 which inhere in the New Jersey act  prevention of negligent or intentional alteration of the tapes and insuring confidentiality. See State v. Cerbo, supra; People v. Iucci, 61 App.Div.2d 1, 401 N.Y.S.2d 823 (App.Div. 1978). Those objectives are not promoted by excluding use of intercepted communications in establishing probable cause for wiretaps or for search warrants. Hence, law enforcement officers may use the tapes for a variety of nontestimonial or evidential uses. United States v. Ricco, 566 F.2d 433 (2 Cir.1977) (use to refresh witnesses recollection permitted); United State v. Fury, supra (use to establish probable cause for wiretap order or search warrant permitted); People v. Iucci, supra, 61 App.Div.2d at 7, 401 N.Y.S.2d at 829.
Moreover, the Burstein wiretap order was obtained before termination of the Greenhause wiretap and hence at a time before the tapes were required to be sealed. The order authorizing the Burstein wiretap was, therefore, valid when issued; we do not regard violation of the sealing requirement of § 14 as requiring the retroactive invalidation of a derivative order when there occurs a delay in sealing the tapes after the derivative order has been validly issued. Certainly nothing in the statute requires that result. The same is true with respect to the search warrants. They were obtained during the Burstein interception and five days (with a weekend included therein) after the termination of the Greenhause wiretap. In these circumstances, we perceive no reason why the derivative order (Burstein tap) and the fruits of the two search warrants must also be suppressed.
Defendants' contention that the order authorizing the Greenhause tap failed to require the State to make reasonable efforts, whenever possible, to reduce the hours of interception authorized by said order N.J.S.A. 2A:156A 12, as a further ground requiring suppression of the Greenhause tapes, need not be resolved because we have ordered the tapes suppressed on other grounds. The same is true of the contention that the absence from the order authorizing the Greenhause interception of the *398 requirement that the order not authorize interceptions for periods in excess of that necessary, and that the Greenhause wiretap in fact was conducted without regard to the State's obligation to minimize the intrusion require suppression.
Finally, defendant Burstein's contention that the applications for the wiretap orders are invalidly authorized in that the appointment of Acting Prosecutor Ronco (who authorized the wiretaps) was unlawful is clearly without merit. R. 2:11-3(e)(2).
Clearly, defendants' decision to plead guilty was based, in part at least, on the trial judge's ruling that the contents of the Greenhause interception were evidential. Because we have held those tapes inadmissible in evidence, we must afford defendants the opportunity of reconsidering, in light of our holding herein, whether they wish to withdraw their guilty pleas. If they desire to do so, they will file their motions at any time within 30 days from the date of this opinion with the trial judge, who will, of course, honor their request, vacate their pleas, and set the matter down for trial in the normal course. If no such motions are received within the time specified herein, then the pleas of guilty and the sentences imposed thereon will stand.
In summary, we reverse the denial of the motion to suppress the Greenhause tapes and affirm the denial of the motion to suppress the Burstein tapes, the search warrants and all evidence obtained pursuant to the search warrants. This case is remanded to the trial court for further proceedings consistent with this opinion.
NOTES
[1] 152 N.J. Super. 30 (App.Div. 1977).