STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v.
NICHOLAS BARRISE, DEFENDANT-APPELLANT.

STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v.
CONCETTA DE HART, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued October 30, 1979—Remanded November 14, 1979—
Reargued April 29, 1980—Decided May 9, 1980.

Before Judges FRITZ, KOLE and LANE.

*Barry G. Evertz* argued the cause for appellant Nicholas Barrise.

*Donald Goldman* argued the cause for appellant Concetta DeHart.

*Michael Albertine,* Assistant Essex County Prosecutor, argued the cause for respondent (*John J. Degnan,* Attorney General of New Jersey, attorney; *Donald S. Coburn,* Essex County Prosecutor, of counsel; *Marc J. Friedman,* Deputy Attorney General, on the brief).

The opinion of the court was delivered by

KOLE, J. A. D.

In our opinion of November 14, 1979 we remanded this matter for a plenary hearing and findings on the issue of whether the State had provided a "satisfactory explanation" for the 40-day delay in sealing the tapes obtained during the wiretap. *See State v. Cerbo,* 78 *N.J.* 595 (1979) (hereafter *Cerbo* ). We reserved for determination the questions of whether defendants

had waived their right to raise the sealing requirement issue at trial by not incorporating it in their pretrial motions to suppress and whether *Cerbo* should be applied to this case which was pending on direct appeal when *Cerbo* was decided.

The trial judge conducted the hearing and has submitted her findings. Further oral argument was held on the remanded issue.

We have reviewed the proofs at the remand hearing and have concluded that the factors in the record on which the trial judge relied plainly do not suffice to sustain her ultimate determination that the State had "met its burden of proving a satisfactory explanation for the delay in sealing [the tapes] under *N.J.S.A.* 2A:156A–14 in this case." Hence that determination was erroneous. *See Pioneer Nat'l Title Ins. Co. v. Lucas*, 155 *N.J.Super.* 332 (App.Div.1978), aff'd o. b. 78 *N.J.* 320 (1978).

The electronic surveillance, ordered by Judge Blake, was terminated on August 1, 1974. He was one of seven judges authorized by the Supreme Court to grant such orders. The tapes were not sealed by Judge Blake until September 10, 1974—a period of 40 days from the date of termination of the surveillance.

We cannot fault the prosecutor for failing to seek out an authorized judge other than Judge Blake to obtain immediate sealing. *N.J.S.A.* 2A:156A–14 on its face seems to contemplate sealing only by the judge issuing the wiretap order by providing that immediately upon expiration of the order, the tapes "shall be transferred to the judge issuing the order and sealed under his direction." We point out that this interpretation of the statute is erroneous and that notwithstanding the foregoing statutory language, sealing can be, and in the absence of availability of the issuing judge must be, obtained from another authorized judge. *See United States v. Poeta*, 455 *F.*2d 117, 122 (2 Cir. 1972), *cert.* den. 406 *U.S.* 948, 92 *S.Ct.* 2041, 32 *L.Ed.*2d 337 (1972).

The problem here, however, involves the failure of the prosecutor's office to seek out Judge Blake with sufficient dispatch for sealing purposes, assuming that it was justified in not availing itself of another authorized judge for that task.

We agree with the trial judge's findings, predicated on sufficient credible evidence, that the prosecutor's office acted in good faith throughout on the assumption, which we hold to be unwarranted in the light of *Cerbo*, that the sealing of the tapes was not an urgent matter; that the integrity of the tapes was preserved throughout the period; that there was no tampering with the tapes, and that the failure to seek prompt sealing in no wise prejudiced defendant or benefited the State.

However, we read *Cerbo*, including its reliance on *United States v. Gigante*, 538 F.2d 502 (2 Cir. 1976), to hold that the aggregate of these factors does not justify a finding of a satisfactory explanation for a failure to obtain immediate sealing of tapes under the statute. Thus, under *Cerbo* the good faith motives of the State, the presence or absence of any tactical advantages gained by the State or prejudice accruing to the defendant, the lack of any evidence of alteration of or tampering with the tapes and the fact that adequate procedures were taken to preserve the integrity of the tapes are not relevant to the issue of a satisfactory explanation for the delay in sealing. Nor is it of any significance under *Cerbo* that substantial paper work was required before presentation of the tapes for sealing. And the prosecutor's view here that immediate sealing of the tapes was not an urgent matter which would result in the sanction of suppression is plainly not an adequate explanation for the 40-day delay in the light of *Cerbo*—and this, despite his evident reliance for this position on such authorities as the United States District Court opinion in *United States v. Falcone*, 364 F.Supp. 877, 894 (D.N.J.1973).[1] *See State v. Burstein*, 172 N.J.Super. 388 (App.Div.1980).

---

[1] This opinion was rendered prior to the August 1,—September 10, 1974 period here involved. The sealing issue was discussed in a cursory fashion.

We hold that under the circumstances of this case there was no satisfactory explanation for the sealing dereliction by the State. The State did not act with the dispatch and reasonable diligence required to meet the statutory sealing requirements of *N.J.S.A.* 2A:156–14.

We do not agree with the judge's finding that for the prosecutor's office to have taken the "secured package [the tapes] from its locked vault and to have driven it 1½ hours to Judge Blake at his summer residence in another part of the State for official signature and sealing would have been an extraordinary emergency measure which may have caused the tapes to have been lost or otherwise adversely affected."

We also do not agree with the determination that the prosecutor's office had adopted a policy not to disturb Judge Blake during his vacation. The credible evidence is to the contrary. The proofs show that Judge Blake, during his period of vacation in Spring Lake, New Jersey, from August 1 and until he resumed his regular judicial duties on September 9, 1974 (from September 2 to September 6 he attended the New Jersey Judicial Conference), made himself available to the prosecutor's office and that that office knew of such availability. On August 29, 1974, at the request of the prosecutor's office, he authorized a wiretap in another case. It is also evident that there was no directive from him forbidding the prosecutor's office to notify him of the need for his services in connection with the sealing of tapes or otherwise while on vacation, his office was staffed during his absence, and he in fact did visit his office during the month of August although he did not give any notice as to when he would be present there.

The opinion was affirmed and the matter given more detailed consideration in the affirming opinion, issued September 30, 1974. 505 *F*.2d 478, 483–484 (3 Cir. 1974), *cert.* den. 420 *U.S.* 955, 95 *S.Ct.* 1338, 43 *L.Ed.*2d 432 (1975).

In any event, if such a policy did exist, it was clearly erroneous and circumvented the purpose of *N.J.S.A.* 2A:156A–14 as discussed in *Cerbo.* We also see no reason for the State's not endeavoring to reach Judge Blake on the weekend of August 31, 1974, when he was on emergent duty, or on September 9, the first day he returned to work.

But our conclusion that there was no satisfactory explanation for the State's failure to comply with the statute's sealing requirements in this case is not fatal to the admissibility of the tapes and thus does not justify a reversal of the convictions.

■ We hold that *Cerbo's* restrictive interpretation of the immediate sealing requirements of the statute, which would result in suppressing tapes as evidence where there has been an unexplained failure of prompt sealing, should not be applied retroactively to wiretaps ordered and completed prior to the date *Cerbo* was decided—that is, February 2, 1979. We believe that *State v. Howery,* 80 *N.J.* 563 (1979) (hereafter *Howery*) and the philosophical underpinnings of *Cerbo* mandate this conclusion.

It is true that *Cerbo* stated that on direct appeal a reversal would have been warranted by reason of the introduction into evidence of tapes violating the sealing requirements; that the sealing requirements of *N.J.S.A.* 2A:156A–14 are an important component of the protective measures governing the conduct of wiretapping under the Wiretap Act; that the "significance of these particular safeguards is to be appreciated in the broader protective framework structured by the Wiretap Act, which calls for court involvement in and continuing judicial supervision of all aspects of wiretapping and electronic surveillance . . ;" that the "authenticity and integrity of the wiretap tapes can be assured only through the tight controls encompassed by the transfer and sealing provisions of the Wiretap Act," and that the intrusion into individual rights of privacy effected by the Wiretap Act must be strictly interpreted and meticulously enforced. *Cerbo, supra,* 78 *N.J.* at 602–604.

But *Cerbo* also indicated that the suppression remedy as to failure to seal does not take precedence over countervailing reasons firmly founded in the efficient and fair administration of criminal justice pursuant to the court rules, such as *R.* 3:22–4 relating to post-conviction relief. In our view such reasons exist here as well, so as to preclude reversal of these convictions where the sealing dereliction occurred prior to the date *Cerbo* was decided.

Despite the importance attached to strict judicial supervision of the governmental intrusion into privacy rights permitted by the Wiretap Act, the court did not consider the delay in sealing of such significance or worthiness as to justify granting post-conviction relief on that ground. We note that the court has not hesitated to grant such relief even if it would otherwise be barred where the matter is of such importance to a defendant that to deny it would be fundamentally unjust. *See State v. Clark*, 65 *N.J.* 426 (1974).

Under *Cerbo* a grant of post-conviction relief is not justified to vindicate the statutory policy involved in immediate sealing where (a) there is no prosecutorial bad faith or insolence in office, (b) the violation has no impact upon the guilt or innocence of a defendant or (c) the violation does not result in an unfair trial or miscarriage of justice for a defendant. These same factors, (a)–(c), are present in the instant case. Accordingly, we perceive no sound reason for holding that an unduly delayed sealing should invalidate the convictions here which occurred prior to *Cerbo* merely because tapes so affected were in evidence, even though they are otherwise unassailable.

It is evident that any deterrent purpose to be served by *Cerbo's* interpretation of *N.J.S.A.* 2A:156A–14 would not be furthered by a retroactive application thereof, particularly where, as here, the reliability and relevancy of the evidence sought to be suppressed—the tapes—are not questioned. The need for close judicial supervision of wiretap evidence in light of the invasion of privacy involved, which essentially is the predi-

cate for the *Cerbo* ruling, does not place so high a value on that
purpose as to require a departure from the usual rule established
in *Howery* of nonretroactivity of a new exclusionary decision.
We are satisfied that the purpose of the *Cerbo* ruling would not
be thwarted or undermined by a prospective application thereof.

Additionally, there is no doubt of the degree of reliance placed
by law enforcement officials on what was conceived to be a
more flexible interpretation of the sealing requirement. There
was existing case law on which they could have reasonably
relied denying motions to suppress evidence involving tapes
which had not been immediately sealed and where there were
substantial delays in sealing, provided the tapes were not tam-
pered with and were otherwise properly preserved. *See Cerbo,
supra,* 78 *N.J.* at 606–607. Some of the federal courts, in
construing the similar federal statute prior to the August 1–Sep-
tember 10, 1974 time frame here involved, had admitted wiretap
evidence under such circumstances. *See United States v. Poeta,
supra* (13–day delay); *United States v. Falcone, supra* (45–day
delay). *Cf. United States v. Angelini,* 565 *F.*2d 469 (7 Cir. 1977),
*cert.* den. 435 *U.S.* 923, 98 *S.Ct.* 1487, 55 *L.Ed.*2d 517 (1978); *see,
also, Cerbo v. Fauver,* 469 *F.Supp.* 1004 (D.N.J.1979). The
reliance by law enforcement officers on such judicial authority
suffices to justify a nonretroactive application of *Cerbo.*

The effect of a retroactive application of *Cerbo* on the admin-
istration of justice may or may not be significant. Conceivably,
it may require courts to hold a substantial number of hearings
to determine the extent to which there is a satisfactory explana-
tion for a failure to obtain immediate sealing of tapes in cases
now pending in the trial courts or on appeal. Further, despite
the integrity of the tapes, it may result in the suppression of the
only available or trustworthy proofs in such cases even though it
is clear that such evidence had not been obtained in bad faith or
through insolence in office. Additionally, as indicated in *Cerbo,*
the sealing requirement in a given case may not bear upon the

guilt or innocence of a particular defendant or the fairness of the trial he is accorded. It is true that under *Cerbo* post-conviction relief would not be granted a defendant who failed to raise the sealing issue on direct appeal. To that extent, holding *Cerbo* to be retroactive might be said to minimize the number of cases to which it would be applied. Nevertheless, on balance, we are satisfied that a solely prospective application of the *Cerbo* rule would in no wise adversely affect the administration of justice. *See State v. Czachor,* 82 *N.J.* 392, 408–410 (1980).

We obviously disagree with the decision in *State v. Burstein, supra,* holding that *Cerbo* is retroactive. Further, we respectfully cannot agree with its statement that it detects "no retroactivity problem here," since *N.J.S.A.* 2A:156A–14 requiring immediate sealing upon termination of the wiretap was enacted in 1968, well before the events in that case, and the State was under "no misconception as to what its responsibility was with respect to the tapes under its control once the . . . wiretap had terminated. That the State may have hoped that the remedy for a statutory violation would not have been as severe as it turned out to be in *Cerbo* is entirely irrelevant to a disposition of this case." *State v. Burstein, supra,* 172 *N.J.Super.* at 394.

It is evident that it was not until *Cerbo* was decided that an authoritative judicial interpretation was placed on the immediate sealing requirement and the consequences thereof. It is not unusual for the apparent plain words of a statute to result in a judicial construction that may differ from the ordinary meaning of the words depending upon such matters as legislative intent. We note, for example, that although the foregoing statutory provision requires immediate sealing, prior to *Cerbo* courts differed as to what was a satisfactory explanation for failure so to seal and the importance of the sealing requirement, provided the tapes' integrity was preserved. Even were this not so, we cannot agree with the apparent thrust of *Burstein* that the words "satisfactory explanation" are words with an immutable

plain meaning. Moreover, the statutory language itself requires that immediately upon the expiration of the wiretap order, the tapes shall be transferred to "*the* judge issuing the order and sealed under his direction." (Emphasis supplied.) Although clear on its face, obviously this does not mean precisely what it states, since it fails to take into account the unavailability or even death of that judge. However, a law enforcement officer might be justified, by a strict reading, in concluding that only the judge issuing the order may seal the tapes. *See United States v. Poeta, supra.*

In view of the foregoing we need not reach the State's contention that defendants waived their right to raise the sealing requirements issue by failing to move to suppress the tapes on this ground prior to trial. We see no need to resolve that waiver question.

In their initial motions to suppress made prior to trial, defendants failed to include the State's dereliction with respect to sealing the tapes as a ground for suppression even though it appears that they then knew of the State's sealing delay. Instead, they waited until just before the tapes were about to be played at trial to raise, by an objection to admissibility of the tapes, the sealing requirement issue.

We note that in *Cerbo* the motion to suppress on the ground of improper sealing was made prior to trial. Nevertheless, in referring to the statutory provision providing for motions to suppress prior to trial, *N.J.S.A.* 2A:156A–21, the court stated that the provision involved motions to suppress for "*particular violations of the Wiretap Act . . .*" (78 *N.J.* at 602; emphasis supplied), which do not include a violation for delay in sealing. Additionally, a similar provision in the comparable federal statute has been interpreted as not including suppression of evidence by reason of a delay in sealing. *United States v. Falcone*, 505 *F.*2d 478, 483 (3 Cir. 1974). Further, *R.* 3:5–7 dealing with motions to suppress evidence, which generally provides that such motions be made before the trial, does not

appear to cover motions to suppress evidence obtained in violation of the Wiretap Act. It seems to be limited to suppression motions relating to searches with or without a warrant.

The desirability of requiring motions relating to failure to seal properly to be made before trial, rather than after the case has been prepared on the basis of the probable admissibility of the tapes, seems self-evident. Thus, we commend to the Supreme Court Committee on Criminal Practice consideration of the adoption of a court rule that would require, as in *R.* 3:5–7, that such motions generally be made before trial. *See United States v. Sisca*, 361 *F.Supp.* 735, 738–741 (S.D.N.Y.1973) aff'd 503 *F.*2d 1337, 1346–1349 (2 Cir. 1974), *cert.* den. 419 *U.S.* 1008, 95 *S.Ct.* 328, 42 *L.Ed.*2d 283 (1974).

In our opinion of November 14, 1979 we determined that the other grounds asserted by defendants for reversal of their convictions were patently without merit. DeHart and Barrise were found guilty of conspiracy to violate the gambling laws, but Barrise was found not guilty of maintaining a gambling establishment and the three charges of bookmaking.

Affirmed.