148 N.J. Super. 542 (1977)
372 A.2d 1315
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT AND CROSS-RESPONDENT,
v.
EDWARD MURPHY, DEFENDANT-RESPONDENT, AND ABRAHAM PRINS AND ROCCO A. SANTARSIERO, DEFENDANTS-RESPONDENTS AND CROSS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued March 1, 1977.
Decided March 18, 1977.
*544 Before Judges HALPERN, ALLCORN and BOTTER.
Mr. Steven L. Strelitz, Assistant Prosecutor, argued the cause for appellant (Mr. James T. O'Halloran, Hudson County Prosecutor, attorney).
Mr. Thomas A. Pavics, Assistant Deputy Public Defender, argued the cause for defendant Prins (Mr. Stanley C. Van Ness, Public Defender, attorney).
Mr. Robert M. Biagiotti argued the cause for defendant Santarsiero (Mr. Donald R. Conway, attorney).
Mr. Samuel R. DeLuca filed a statement in lieu of brief on behalf of defendant Murphy.
The opinion of the court was delivered by BOTTER, J.A.D.
Based upon information obtained through intercepted telephone conversations, defendants were indicted for conspiracy to violate the State's gambling laws. Thereafter, evidence against defendants, Edward Murphy, Abraham Prins and Rocco A. Santarsiero, which derived from the initial wiretap of telephones registered to Murphy's wife, Mary E. Murphy, was suppressed by the trial judge. This evidence had been obtained through wiretap orders against the Murphy and Santarsiero telephones entered in purported compliance with the New Jersey Wiretapping and Electronic Surveillance Control Act, N.J.S.A. 2A:156A-1 et seq. The State has appealed from the order of suppression, leave to appeal having been granted by us, whether or not needed. See R. 2:2-3(a); N.J.S.A. 2A:156A-21.
The order to suppress was granted on the ground that the initial order authorizing the wiretap of the Murphy telephones did not name Edward Murphy as a person whose conversations were to be intercepted. Opinion below, 137 N.J. Super. 404, 424-428 (Law Div. 1975). The trial judge held that all subsequent wiretaps were tainted by the *545 illegality of the initial order. Defendants contend that the order to suppress was properly granted because the State also failed to make formal service upon them of an inventory of information within 90 days after the termination of the last wiretap order or extension thereof, as required by N.J.S.A. 2A:156A-16. Defendants Prins and Santarsiero also cross-appeal from adverse rulings of the trial judge in other respects. The cross-appeals will be discussed below.
Many of the relevant facts are contained in the trial judge's opinion, reported in 137 N.J. Super. 404. The trial judge found that there was probable cause for the issuance of the first wiretap order directed to the telephones at Murphy's home. The act is designed to allow electronic interception of communications for the purpose of uncovering evidence of certain crimes designated in N.J.S.A. 2A: 156A-8, including murder, gambling, loansharking and other offenses, and conspiracy to commit said offenses. N.J.S.A. 2A:156A-8; N.J.S.A. 2A:156A-10(b).
The affidavit in support of the first application detailed evidence concerning the "gangland" execution of Alfred Nicholas Nardone and Murphy's likely involvement in and knowledge of that offense. Nardone's body was found in New York City behind the steering wheel of an automobile with three bullets in his head. His body was found within one hour of his leaving home at 8:20 P.M. on April 22, 1974, after telling his wife that he was on his way to meet defendant Murphy in New York City. The affidavit established: that Nardone spoke to Murphy on April 9, 1974; that Nardone's associate or "protector" was Abraham "Tony" Prins; that around the time of Nardone's murder Prins was in the New Jersey State Prison for revocation of his parole; that while there Prins had been assigned to the "Inmate Legal Association" and that 23 collect calls were made from telephones at the office of the Inmate Legal Association to Murphy's home telephone during April 1974, before and after Nardone's murder; and that calls were made *546 from Murphy to the Association's telephones in the same month. Sixteen collect calls were also made to Murphy's telephones in May 1974 from the Inmate Legal Association's telephones in State Prison. A pattern of evidence, including an interview with Murphy, gave reason to believe that Nardone, Murphy and Prins were probably involved in organized crime and that Murphy was concealing information that he had concerning Nardone's murder.
The initial wiretap of the telephones at the Murphy home established that Murphy was engaged in illegal gambling activity. Extensions of the wiretap revealed continuing evidence of Murphy's participation in illegal gambling activity as well as his involvement in negotiations for the sale of stolen property and other criminal offenses. The wiretaps also disclosed that defendant Rocco A. "Rocky" Santarsiero was also involved with Murphy in such activity. Accordingly, application was made to wiretap the telephone facilities at Santarsiero's residence.
We consider first the contention that the failure to name defendants in the wiretap orders warranted the suppression of evidence. The first and subsequent affidavits recited in detail Murphy's activity, his relationship to the offenses being investigated, and the reason for seeking an order authorizing the electronic interception of his conversations on telephones listed in his wife's name at his home. The affidavits clearly indicated that Murphy was a target of investigation and that the telephones were used primarily by him. In these circumstances he should have been named in the wiretap orders as well as the affidavits supporting the applications. N.J.S.A. 2A:156A-12(b); N.J.S.A. 2A:156A-9; State v. Cirillo, 146 N.J. Super. 577 (App. Div. 1977); cf. United States v. Donovan, ___ U.S. ___, 97 S.Ct. 658, 50 L.Ed.2d 652 (1977), interpreting similar provisions in the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C.A. § 2518(4)(a). The same applies to defendant Santarsiero. The issue is not as clear as to Prins, since no wiretap was directed toward a telephone that he was *547 using. Nevertheless, since conversations of interest between Prins and Murphy could have been anticipated, we conclude that his conversations were also a target of the investigation and he should have been named in the intercept orders authorizing wiretaps on the Murphy telephones.
However, on the facts of this case the omission of defendants' names from the intercept orders did not warrant the extreme remedy of suppression of criminal evidence as a means of assuring compliance with these important provisions of the Electronic Surveillance Control Act.
The Legislature authorized suppression of evidence as a remedy where the communications were "unlawfully intercepted" (N.J.S.A. 2A.156A-21(a)) or where the authorizing order is "insufficient on its face." N.J.S.A. 2A: 156A-21(b). Here we cannot say that the intercept orders were facially deficient. Cf. United States v. Donovan, supra, ___ U.S. at ___, 97 S.Ct. at 673, 50 L.Ed.2d at 671. Looking at the orders alone, one cannot determine that they failed to state the names of persons committing an offense under investigation whose identity was known and whose conversations were to be intercepted  the conditions which require such persons to be named in the intercept orders.
However, N.J.S.A. 2A:156A-21(a) authorizes suppression of evidence if the communication was "unlawfully intercepted." The naming of known targets of the proposed electronic surveillance is an essential part of the legislative scheme. It will tend to assure compliance with the provision requiring that notice be given to the issuing judge of all prior applications. N.J.S.A. 2A:156A-9(e). It will also tend to assure compliance with the provision requiring service of an "inventory" upon persons who were named in the intercept orders or applications (and, in the discretion of the issuing judge, upon parties to the intercepted communications). N.J.S.A. 2A:156A-16.
Electronic surveillance threatens to intrude upon the privacy and liberty of our citizens to such an extent that we must insist on strict compliance with the substantive and *548 procedural safeguards established by statutory and constitutional law. Nevertheless, suppression of evidence for errors of a procedural nature is not mandatory. Here the "substantive" requirements of law, for example, proof of probable cause and the need for electronic surveillance (see N.J.S.A. 2A:156A-10), were satisfied. The applications disclosed in detail the information relied upon, how it was obtained, the names of defendants and other persons involved in dealings with Murphy, and their relation to the criminal activity and to each other. There is no indication that the names of the intercept targets were omitted from orders except through oversight. There is no evidence of bad faith. In fact, Santarsiero's name, address and telephone numbers were literally included in the captions of the orders authorizing the interception of conversations on his telephone, and Mrs. Murphy's name, address and telephone numbers were included in the caption of the orders directed to the Murphy telephones. See State v. Cirillo, supra. All defendants were clearly and repeatedly mentioned in the affidavits supporting the applications. The failure to include their names in the body of the orders, as well as the failure to serve inventories upon them, cannot have resulted from a wrongful motive to conceal anything.
We find that no prejudice resulted from the failure to name defendants in the body of the intercept orders. In the circumstances before us this deficiency does not warrant suppression of the criminal evidence against defendants. The same applies to the failure to make timely service of inventories upon defendants as required by N.J.S.A. 2A: 156A-16. The State sought to prove that oral notice of the wiretap orders was given to defendants, and they did bring these motions to suppress before trial. Oral notice is not proper compliance with the act. Although N.J.S.A. 2A: 156A-21 does not authorize suppression for the failure to comply with post-interception provisions, suppression may be an appropriate judicial remedy to prevent the occurrence of intentional or insolent violations of statutory requirements.
*549 In our opinion, however, on the facts of this case the remedy of suppression was not warranted. See State v. Cirillo, supra; State v. Dye, 60 N.J. 518, 539-542 (1972), cert. den. 409 U.S. 1090, 93 S.Ct. 699, 34 L.Ed.2d 675 (1972); State v. Sidoti, 134 N.J. Super. 426 (App. Div. 1975). The trial judge made his ruling in this case before State v. Cirillo, supra, was decided. He did not have the benefit of our views in that case. We are certain that these cases will have the effect of fastening the attention of law enforcement officers and authorized issuing judges upon the need for strict compliance with these sections, N.J.S.A. 2A:156A-12(b) and N.J.S.A. 2A:156A-16, and these errors will be avoided in the future.
The cross-appeals of Santarsiero and Prins assert other grounds for suppressing the evidence and dismissing the indictment. One contention, asserted here for the first time, is that the State failed to comply with N.J.S.A. 2A: 156A-17(b) and N.J.S.A. 2A:156A-18. Defendants argue that initially the State was seeking evidence of a conspiracy to murder Nardone and to conceal evidence of his murder, but the State proceeded to present to the grand jury evidence of other crimes, namely, illegal gambling activity, without prior judicial authorization. But before presenting the matter to the grand jury extension orders were granted by the issuing judge after disclosure to him of the criminal activity discovered through the original wiretap. The initial order was entered July 11, 1974. The first renewal order was dated August 8, 1974. This second order and subsequent orders, issued on applications to search for evidence of illegal gambling activity, loansharking and other criminal conspiracies, clearly implied authority to present such evidence to a grand jury. See United States v. Tortorello, 480 F.2d 764, 781-783 (2 Cir.1973), cert. den. 414 U.S. 866, 94 S.Ct. 63, 38 L.Ed.2d 86 (1973); United States v. Rizzo, 492 F.2d 443, 447 (2 Cir.1974), cert. den. 417 U.S. 944, 94 S.Ct. 3069, 41 L.Ed.2d 665 (1974).
*550 On the cross-appeals defendants also assert that they were entitled to a plenary hearing to test the sufficiency of the affidavit supporting the July 11, 1974 wiretap order. They argue that the highest standard of good faith is required for an electronic surveillance order. Normally, however, a plenary hearing will not be allowed to test probable cause. See New Jersey v. Petillo, 61 N.J. 165 (1972), cert. den. 410 U.S. 945, 93 S.Ct. 1393, 35 L.Ed.2d 611 (1973), writ of habeas corpus issued sub nom. United States ex rel. Petillo v. State of New Jersey, 418 F. Supp. 686 (D.N.J. 1976); State v. Carluccio, 61 N.J. 125 (1972), rev'g 116 N.J. Super. 49 (Law Div. 1971). Moreover, the record before us contains insufficient proof of falsity in the affidavit or the misrepresentation of fact which might justify a plenary hearing in jurisdictions adhering to a different rule. See United States v. Armocida, 515 F.2d 29, 41 (3 Cir.1975), cert. den. 423 U.S. 858, 96 S.Ct. 111, 46 L.Ed.2d 84 (1975); United States v. Carmichael, 489 F.2d 983 (7 Cir.1973); United States v. Marihart, 492 F.2d 897, 900 (8 Cir.1974), cert. den. 419 U.S. 827, 95 S.Ct. 46, 42 L.Ed.2d 51 (1974); cf. United States v. Thomas, 489 F.2d 664 (5 Cir.1973), cert. den. 423 U.S. 844, 96 S.Ct. 79, 46 L.Ed.2d 64 (1975). See State v. Carluccio, supra. Thus, we reject defendants' contentions.
Defendants also contend that (a) probable cause for issuance of the initial wiretap order was lacking because information in the affidavit was stale; (b) the duration of the wiretap interceptions was unnecessarily long and unduly extended, and (c) attachment of a touch-tone decoder to the Murphy telephone was an unauthorzed search. We find no merit to these contentions, substantially for the reasons stated by the trial judge in his reported opinion.
We reverse and vacate the order of suppression and remand the case to the trial court so that it may proceed to trial.