IN THE MATTER OF THE APPLICATION OF JOHN DOE FOR DISCLOSURE OF THE TAPES AND TRANSCRIPTS OF HIS CONVERSATIONS THAT WERE INTERCEPTED OVER A TELEPHONE FACILITY IN NEW JERSEY.

Superior Court of New Jersey
Law Division Bergen County

Decided April 9, 1982.

*Thomas S. Finegan* and *Michael Ross* of the New York Bar for applicant John Doe (*LaRossa, Brownstein & Mitchell,* attorneys).

*Norman J. Schroeder,* Deputy Attorney General, for the State of New Jersey (*Irwin I. Kimmelman,* Attorney General of New Jersey; *Mark M. Baker,* Special Assistant Attorney General, on the brief, *Thomas A. Duffy, Jr.,* Deputy Attorney General, New York State Department of Law Office of the Special Prosecutor).

SIMPSON, A. J. S. C.

This is an application for pre-indictment discovery of wire-tapped telephone conversations pursuant to *N.J.S.A.* 2A:156A–16 that provides in pertinent part:

> The court, upon filing of a motion, may in its discretion make available to such persons or their attorneys for inspection such portions of the intercepted communications, applications and orders as the court determines to be in the interest of justice.

John Doe (not the applicant's real name) has received an inventory dated December 24, 1981, pursuant to the same statute, advising him and other identified persons that:

a and b.—A wiretap order was entered by another judge on February 26, 1981 and an extension order entered on March 20, 1981.

c. The periods of authorized interception were for 20 days, commencing February 27, 1981, and 10 days, commencing March 20, 1981, respectively.

d. During the period communications were intercepted.

The caption identified ten persons, including John Doe, as engaging in the offenses of bribery (*N.J.S.A.* 2C:27–2), promoting gambling (*N.J.S.A.* 2C:37–2), and conspiracy to commit same (*N.J.S.A.* 2C:5–2), and specified the telephone facility number and listing address in New Jersey. Doe also received notice of the wiretapping from the Special State Prosecutor in New York City. Oral arguments were *in camera* and an affidavit of a Deputy Attorney General of New Jersey indicated Doe was advised on October 17, 1981 by the New York Office of the Special Prosecutor that he was a target of an investigation in New York of suspected illegal gambling and a related gambling protection scheme.

John Doe did not appear before this court, nor did he file any affidavits in support of his motion. Through counsel he asserts he is a 34-year-old criminal lawyer and former New York City police officer on disability retirement. He contends the interest of justice calls for the discretionary disclosure to "remove the ugly and public suspicion that has both sullied his good name and threatened his livelihood" and "so that he may intelligently exercise his option to appear before the Grand Jury and through his testimony fully explain whatever conversations of his were intercepted."

The Attorney General of New Jersey and Special State Prosecutor of New York oppose disclosure at this time for several reasons. First, the New Jersey wiretaps were only a small part of a bi-state investigation and much more extensive electronic surveillance in New York (including John Doe, but where he has made no disclosure application)—and therefore the application should be made to the New York judge presiding over the investigative grand jury considering evidence of "an elaborate criminal enterprise." Second, New Jersey is not pursuing a

prosecution of Doe and has deferred to New York. Third, there is an inadequate showing of need by Doe for disclosure. Fourth, disclosure at this time would prejudice a current grand jury investigation requiring secrecy.

## I. *Jurisdiction*

■ As to serving of inventories, the contents thereof, inspection of intercepted communications, and applications and orders, *N.J.S.A.* 2A:156A–16 refers sometimes to the "judge" and otherwise to the "court." The definitions section of the New Jersey Wiretapping and Electronic Surveillance Control Act,[1] *N.J.S.A.* 2A:156A–2 h and i, makes it clear that any of several judges of the Superior Court, designated from time to time by the Chief Justice of the Supreme Court, may act in wiretap matters. The present disclosure application is properly before me pursuant to the order of Chief Justice Robert N. Wilentz, dated August 6, 1981, and providing for "full statewide jurisdiction for purposes of the New Jersey Wiretapping and Electronic Surveillance Control Act and any applications under the Act." The judge who issued the wiretap order and extension has been elevated to the Appellate Division and is no longer a designated judge for purposes of the act. It was therefore not possible for him to cause the inventory to be served or to entertain this motion, and jurisdiction in these matters devolved upon the several designated judges with full statewide jurisdiction, including myself.

In view of *N.J.S.A.* 2A:156A–24, providing for civil actions for damages and attorney's fees for unlawful interception, disclosure or use of wire interceptions, jurisdiction as to New Jersey authorized wiretap matters must remain with New Jersey designated judges. Because of the bi-state nature of the investigation, however, and the greater present interest of New York State evidenced by the on-going New York grand jury inquiry, an initial application could have been made to the Extraordinary Special and Trial Term of the Supreme Court, New York Coun-

---

[1] *N.J.S.A.* 2A:156A–1 *et seq.*

ty. Assuming a favorable recommendation from the New York Supreme Court justice, this court could then consider the application in the light of New Jersey interests without concern as to prejudicing a New York grand jury investigation. In any event, there is no jurisdictional bar, now or hereafter, to an application for *N.J.S.A.* 2A:156A–16 disclosure, since the wiretapping was in New Jersey.

## II. *Discovery*

There are no reported decisions in this State addressing the subject of pre-indictment discovery of wiretap materials. Pretrial discovery is not a constitutional right and was not a right recognized at common law. *Howard Savings Institution v. Francis,* 133 *N.J.Super.* 54, 59 (App.Div.1975). Liberal discovery in criminal cases is now available pursuant to *R.* 3:13–3, but the court has discretionary power to limit and control discovery. Discovery may be denied, restricted or deferred, with the court considering factors such as the need to protect witnesses from intimidation, the need for secrecy regarding informants as required for effective investigation of criminal activity, and the protection of confidential relationships recognized by law. *R.* 3:13–3(d)(1). In determining the need for a protective order, a showing of good cause may be permitted in the form of a written statement to be inspected by the court alone. *R.* 3:13–3(d)(2). Our criminal discovery rules permit discovery by a defendant only after he has been indicted and not while a grand jury is still investigating his alleged offense. *R.* 3:13–3(e); *Howard Savings, supra* at p. 60; *State v. Polito,* 146 *N.J.Super.* 552, 557 (App.Div.1977). Even if our court rules could be construed to permit discretionary pre-indictment discovery because of the provisions of *N.J.S.A.* 2A:156A–16, such disclosure of the wiretap materials would be inappropriate at this time in this case. Pursuant to *R.* 3:13–3(d)(2) I have reviewed, *in camera* and over the objection of Doe's counsel, an affidavit of the Associate Director of Investigations, Office of the New York Special Prosecutor. It fully supports the need for nondisclosure at this time, has been sealed by me and preserved with the

wiretap records—to be made available only to an appellate court in the event of an appeal.

In *State v. Murphy,* 148 *N.J.Super.* 542 (App.Div.1977), it was noted that

Electronic surveillance threatens to intrude upon the privacy and liberty of our citizens to such an extent that we must insist on strict compliance with the substantive and procedural safeguards established by statutory and constitutional law. [at 548]

There has been strict compliance with *N.J.S.A.* 2A:156A–16 here. In *State v. Braeunig,* 122 *N.J.Super.* 319 (App.Div.1973), Judge (now Justice) Handler reviewed the history of the New Jersey Wiretapping and Electronic Surveillance Control Act and the comparable federal disclosure provisions of the Omnibus Crime Control and Safe Street Act of 1968. Among the reasons for withholding disclosure of intercepted communications he specifically identified "conversations concerning other criminal activities which may be the subject of pending investigations" (at 330). Even after indictment and conviction of gambling offenses, access to tapes and logs was directed subject to terms and conditions resulting from concrete and specific objections by the Attorney General or the court on its own motion. Similar procedures should be followed in the present case if indictments result.

■ *N.J.S.A.* 2A:156A–16 and *R.* 3:13–3 must be read together and the secrecy and confidentiality needs of grand juries and law enforcement authorities balanced against the needs of persons receiving inventory notices as to electronic surveillance. In exercising its discretion "in the interest of justice" the court must weigh the sometimes competing interests of the public, grand juries, police and prosecutors on one hand against those of potential witnesses, targets and defendants on the other. In the present case, time is the critical factor and disclosure should be denied upon a showing—by *in camera* affidavit or otherwise—of a present need for secrecy while a criminal investigation is in progress. Since *N.J.S.A.* 2A:156A–16 also provides that "On an ex parte showing of good cause to the court the serving of the

inventories required by this section may be postponed," the government objecting to disclosure after such service bears the burden of an affirmative showing of a need to preserve secrecy because of an ongoing investigation. Such a showing has been made in this case through the *in camera* affidavit reviewed by the court alone.

Federal, New York and other persuasive authorities are collected in *Carr, The Law of Electronic Surveillance* (1977), § 7.02, and *Fishman, Wiretapping and Eavesdropping* (1978), §§ 220 and 239, and generally accord with the determination in the present case. Neither the American Bar Association Electronic Surveillance Standards[2] nor those relating to Discovery and Procedure Before Trial[3] address the subject of pre-indictment discovery of wiretap materials; hence, this has been left to development by the courts. Counsel agreed, and the court's independent research confirmed, that all reported cases[4] from other jurisdictions have so far denied pre-indictment discovery of wiretapped conversations following notice by receipt of inventory. Doe's counsel seeks to distinguish all these cases as seeking broader disclosure of applications and orders as well as the intercepted communications. Although this appears to be so, in none of them was even limited discovery ordered. Furthermore, the reason for nondisclosure at this time in this case—to avoid compromising an ongoing criminal investigation requiring secrecy during presentation to a grand jury—is applicable to applications, orders, and intercepted communications.

Even accepting counsel's assertions as to harm to his client's reputation and ability to practice criminal law, it is clear there is a greater temporary need for nondisclosure during the current

---

[2]ABA Standards for Criminal Justice (2 ed. 1980), 2–1.1 *et seq.* Standard 2–5.14 as to inventories is essentially similar to *N.J.S.A.* 2A:156A–16, but does not address the subject of inspection of intercepted communications.

[3]ABA Standards for Criminal Justice (2 ed. 1980), 11–1.1 *et seq.*

[4]They are collected in the *Carr* and *Fishman* treatises.

presentation to the grand jury. The government estimated that indictments would be returned in two to three months and Doe's counsel agreed that such a delay would not be unreasonable. The application is denied at this time, without prejudice to filing of a further motion in the future—if necessary in the interest of justice.