582 A.2d 835

STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. FRANCIS
SULLIVAN, ET AL., DEFENDANTS-RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued October 11, 1990—Decided November 20, 1990.

358

Before Judges GAULKIN, SHEBELL and HAVEY.

*Richard C. Szuch,* Assistant Prosecutor, argued the cause for appellant (*W. Michael Murphy, Jr.,* Morris County Prosecutor, attorney).

*Peter N. Gilbreth* argued the cause for respondent Francis Sullivan (*Stephen S. Weinstein,* attorney).

*Clifford J. Weininger* argued the cause for respondents Herman Wertheim and Charles Palma (*Robert M. Zaleski,* on the brief).

*R. Gregory Leonard* argued the cause for respondent William Jenkins (*Leonard & Butler,* attorneys; *John R. Scott,* on the brief).

*Chiarolanza & DeAngelis,* attorneys for respondent Charles Palma.

*Herbert M. Korn,* attorney for defendants Donna Sutton (Wolsky) and Robert Wolsky.

The opinion of the court was delivered by

GAULKIN, P.J.A.D.

The State appeals by leave granted (*R.* 2:2–4) from an order suppressing certain "wiretap tapes, logs and evidence derived therefrom." The questions raised are (1) whether section 14 of the New Jersey Wiretapping and Electronic Surveillance Control Act (*N.J.S.A.* 2A:156A–1 *et seq.*) was violated when the

State failed to record 62 calls intercepted during a 27–hour period its primary cassette recorder was malfunctioning and (2) if so, whether that violation of the statute requires or justifies suppression of all recordings made after the malfunction was corrected.

In his April 25, 1990 written opinion, the motion judge succinctly summarized the undisputed facts concerning the wiretap, the recording procedures and the equipment malfunction:

Pursuant to the Order of March 8, 1988 of the Honorable Peter Ciolino, A.J.S.C., a tap of the telephone of defendant, Charles Palma, commenced March 11, 1988 by the Special Enforcement Unit of the Morris County Prosecutor's Office. Sgt. Edward Facas, a member of the Special Enforcement Unit, was placed in charge of both the Palma and Sullivan wiretap operations. Allan Iskra, Esq., an Assistant Morris County Prosecutor at the time, was the legal advisor for these operations. The subsequent wiretap of the telephone of defendant, Francis Sullivan, was pursuant to the April 12, 1988 Order of the Honorable Donald S. Coburn, J.S.C., and the wiretap commenced April 14, 1988.

Various witnesses testified that both wiretaps utilized a primary cassette recorder connected to an intercepting device to record intercepted wire communications. Monitors were on duty and all except one were lectured by Mr. Iskra concerning minimization procedures. Each monitor had the freedom to employ another cassette recorder, unconnected to the primary cassette recorder, for note taking of wire communications. The monitor's cassette recorder was placed next to the primary cassette recorder to record from the audio of the primary cassette recorder. This procedure potentially allowed intercepted wire communications to be recorded only on a monitor's cassette recorder, when the primary cassette recorder was being minimized. After interception, the tape in the monitor's cassette recorder would be stopped, played back, resume recording over previously recorded interceptions, and erased.

No particular instructions were given by Mr. Iskra or Sgt. Facas or anyone in a position of authority concerning use of cassette recorders by monitors. In fact, Sgt. Facas acknowledged that he was not immediately aware monitors were using cassette recorders when the Palma wiretap commenced. Mr. Iskra admitted that he never knew monitors were using these cassettes all during the Palma and Sullivan wiretaps. Yet, former Prosecutor's Investigator, Stephen Coe, testified such cassettes have been used since 1985.

On March 12, 1988, Sgt. Facas discovered certain intercepted wire communications were not recorded on the primary cassette recorder. Facas was checking the logs of conversations, prepared by the monitors, against the actual taped conversations. Facas had made a duplicate of the tape from the primary cassette recorder which he played back to make this check. Calls 34 through 37 on Tape 1 on March 11, 1988 had not been recorded. Despite Facas' discovery the interceptions continued; and calls 38 through 72 on Tape 2, between 9:00 a.m. on March 12, 1988 and 1:00 a.m. on March 13, 1988 were intercepted but

not recorded on the primary cassette recorder. On March 13, 1988 calls 73 through 95 also were intercepted but not recorded. The log of Tape 3 for March 13, 1988 indicates the equipment problems were corrected at approximately 3:30 p.m. Sgt. Facas testified that he attempted to resolve the problem without interrupting the interceptions on March 12 and 13, 1988.

Despite his knowledge of the failure of recording, Facas knew the wire communications were still being intercepted since the audio of the primary cassette recorder was working and was the source of the monitor's logs for the unrecorded calls. Facas testified that he subsequently identified a malfunction of the "slave, decoder and pen register," which prevented recording by the primary cassette recorder. Mr. Iskra and former Sgt. Vincent Moscaritola, then in charge of the Special Enforcement Unit, were told of the equipment problems by Sgt. Facas. Mr. Iskra told Sgt. Facas to prepare a report and Iskra said, "it was an honest mistake" according to Facas' testimony. At no time was any order given by anyone in authority to shut down the Palma wiretap once the failure to record on the primary cassette recorder was discovered. At no time did anyone in authority review the wiretap procedures and operations to determine whether continued recording on the primary cassette recorder was practicable.

The motion judge found that the State's failure to record conversations 38 through 95 violated section 14 of the Act (*N.J.S.A.* 2A:156A–14), which provides in relevant part:

Any wire or oral communication intercepted in accordance with this act shall, if practicable, be recorded by tape, wire or other comparable method.

Since calls 34 through 37 went unrecorded before the malfunction was discovered, the judge found they did not raise any "issues of practicability." However, the judge found that once "Sgt. Facas knew the audio on the primary cassette recorder was continuing to relay the interceptions" he could have recorded the conversations "[u]sing a second cassette recorder." Because that alternative procedure was not employed when the malfunction was recognized, the judge found "a failure to comply with the basic requirements of *N.J.S.A.* 2A:156A–14."

Substantially for the reasons thus expressed, we affirm the motion judge's ruling that the State's failure to record conversations 33 through 95 constituted a violation of *N.J.S.A.* 2A:156A–14. We conclude, however, that the violation neither requires nor justifies suppression of conversations intercepted

and recorded after the malfunction had been corrected.[1]

No reported New Jersey case has discussed the recording provision of section 14 or the appropriate remedy for its violation. In ordering suppression, the motion judge relied substantially on *State v. Cerbo*, 78 *N.J.* 595, 397 *A.*2d 671 (1979), where our Supreme Court held that a failure to comply with the section 14 sealing procedures required exclusion of the recordings from evidence. *Id.* at 603, 397 *A.*2d 671. *Cerbo*, however, does not mandate suppression here.

First, in *Cerbo* none of the wiretap recordings had been properly sealed; the Court thus did not decide whether a statutory violation affecting certain recordings called for suppression of other recordings made in compliance with the statutory requirements. Second, the Court in *Cerbo* found that "[t]he authenticity and integrity of the wiretap tapes can be assured only through the tight controls encompassed by the transfer and sealing provisions," *id.* at 603, 397 *A.*2d 671; here the authenticity and integrity of the suppressed recordings are in no way impugned by the failure to record earlier conversations. Third, the Court in *Cerbo* relied on specific language of section 14 which applies only to the sealing requirement:

> The presence of the seal provided by this section, or a satisfactory explanation for its absence, shall be a prerequisite for the disclosure of the contents of any wire or oral communication, or evidence derived therefrom....

The Court found that this "plain and clear language" required that "if the transfer and sealing requirements are not met, the contents of the wiretap tape and its evidential by-products cannot be used in evidence." *Id.* at 602, 397 *A.*2d 671; see also *State v. Burstein*, 85 *N.J.* 394, 404, 427 *A.*2d 525 (1981). Section 14 does not provide any similar suppression sanction for violation of the recordation requirement.

---

[1]Both in the trial court and here the State has represented that it does not seek to offer evidence of the unrecorded conversations and thus does not challenge the suppression of conversations 33 through 95.

We are also satisfied that the general suppression remedy of section 21 (*N.J.S.A.* 2A:156A–21) does not apply. That section requires the court to suppress "the entire contents of all intercepted wire or oral communications obtained during or after any interception which is determined to be in violation of [the Act]" for any of the following reasons:

a. The communication was unlawfully intercepted;

b. The order of authorization is insufficient on its face;

c. The interception was not made in conformity with the order of authorization or in accordance with the requirements of section 12.

Defendants do not suggest that the failure to record was a subsection b or c violation, but urge it rendered all communications "unlawfully intercepted" under subsection a. We reject that contention. Not every failure to comply fully with the procedural requirements of the Act renders the interception unlawful. *See, e.g., State v. Murphy,* 148 *N.J.Super.* 542, 372 *A.*2d 1315 (App.Div.1977), where we held that an inadvertent failure to name defendant in the wiretap order did not make the intercepts "unlawful" within section 21. Violation of a procedural requirement of the Act triggers the statutory suppression remedy only where the procedure "is a critical part of the protections surrounding a court-authorized electronic surveillance." *Cerbo,* 78 *N.J.* at 603, 397 *A.*2d 671.

A like formulation is used under the comparable federal statute, Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 *U.S.C.A.* § 2510 *et seq.,* upon which the New Jersey Act is patterned. *See In re Wire Communication,* 76 *N.J.* 255, 262, 386 *A.*2d 1295 (1978). The federal law similarly mandates suppression upon a showing that "the communication was unlawfully intercepted." 18 *U.S.C.A.* § 2518(10)(a)(i). But the United States Supreme Court has rejected the suggestion that "every failure to comply fully with any requirement provided in Title III would render the interception of wire or oral communications unlawful." *United States v. Chavez,* 416 *U.S.* 562, 574–75, 94 *S.Ct.* 1849, 1856, 40 *L.Ed.*2d 380 (1974). Rather, suppression is required only for "failure to

satisfy any of those statutory requirements that directly and substantially implement the congressional intention to limit the use of interception procedures to those situations clearly calling for the employment of this extraordinary investigative device." *United States v. Giordano*, 416 *U.S.* 505, 527, 94 *S.Ct.* 1820, 1832, 40 *L.Ed.*2d, 341 (1974). *See also United States v. Ojeda Rios*, —— *U.S.* ——, n. 1, 110 *S.Ct.* 1845, 1847, n. 1, 109 *L.Ed.*2d, 224, 232, n. 1 (1990) (general suppression remedy under 18 *U.S.C.A.* § 2518(10) is "not applicable" where the statutory sealing requirement was not satisfied).

In applying those general principles to violations of the federal recording requirement (18 *U.S.C.A.* § 2518(8)(a)), the federal courts have consistently held that such violations do not call for suppression of all evidence obtained in the wiretap. The reasoning is most fully stated in *United States v. Clerkley*, 556 *F.*2d 709 (4th Cir.1977), *cert.* den. 436 *U.S.* 930, 98 *S.Ct.* 2830, 56 *L.Ed.*2d 775 (1978), where defendants sought to suppress all incriminating evidence obtained by a wiretap because the government failed to record all intercepted conversations as required by 18 *U.S.C.A.* § 2518(8)(a). The court agreed that a violation had occurred, but held that it did not render the telephone conversations "unlawfully intercepted" within the meaning of 18 *U.S.C.A.* § 2518(10)(a)(i). The recording provision was "enacted to serve an evidentiary function," because tape recordings "would be the best evidence and would be almost irrefutable if their authenticity and physical integrity were guaranteed." *Id.* at 719. The recording requirement was not "intended to limit the use of wiretapping so as to preserve rights of privacy" but rather "to insure that the product of surveillance will be received under traditional rules of evidence." Accordingly, "a failure to record, though admittedly a violation of the statute, does not lead to suppression and reversal of the convictions." *Ibid.* *Accord United States v. Daly*, 535 *F.*2d 434 (8th Cir.1976); *United States v. Paredes–Moya*, 722 *F.Supp.* 1402, 1407–1409 (N.D.Tex.1989); *United States v. Gerena*, 695 *F.Supp.* 1379, 1393–1394 (D.Conn.1988).

■ We find those holdings to be persuasive, equally applicable to the similar provisions of the New Jersey Act and entirely consistent with *Cerbo.* We recognize that our courts "have historically given a strict construction to the New Jersey Wiretap Act" (*State v. Catania,* 85 *N.J.* 418, 437, 427 *A.*2d 537 (1981)) and have found that our Legislature imposed some stricter guidelines than did Congress. *Ibid.* Suppression of evidence of unrecorded communications, and evidence derived therefrom, could certainly be an appropriate judicially-fashioned sanction for a section 14 recording violation. *Cf. State v. Hunt,* 91 *N.J.* 338, 349, 450 *A.*2d 952 (1982); *State v. Davis,* 204 *N.J.Super.* 181, 184, 497 *A.*2d 1284 (App.Div.1985), certif. den. 104 *N.J.* 378, 517 *A.*2d 388 (1986); *State v. Fenin,* 154 *N.J.Super.* 282, 287, 381 *A.*2d 364 (App.Div.1977). But we find no reason to conclude that the Legislature intended to extend that sanction beyond its usual role by excluding untainted evidence obtained after such a violation has been remedied.[2] *Compare Catania,* 85 *N.J.* at 429–439, 427 *A.*2d 537 (finding specific legislative direction in *N.J.S.A.* 2A:156A–21 for suppression of all intercepted communications in the event of a minimization violation); *see also State v. Sidoti,* 134 *N.J.Super.* 426, 429, 341 *A.*2d 670 (App.Div.1975) (violation of *N.J.S.A.* 2A:156A–16 inventory requirement does not justify suppression).

■■ We also reject defendants' contentions that the failure to record conversations 33 through 95 has unfairly deprived them of the opportunity to show that the subsequently recorded conversations were in fact not incriminatory and that the State failed to minimize its interceptions as required by *N.J.S.A.* 2A:156A–12. The record offers nothing to suggest that the absence of the unrecorded communications might distort or cause misinterpretation of the subsequently recorded conversations. Nor does the record justify any inference that the

---

[2]We need not decide here whether a broader suppression remedy might be appropriate upon a showing of "intentional or insolent violations of statutory requirements." *Murphy,* 148 *N.J.Super.* at 548, 372 *A.*2d 1315.

unrecorded conversations would demonstrate a failure to minimize not apparent in the recorded conversations, which comprise 90% of the intercepted communications. There is thus no reason to infer any unfair prejudice. See *Clerkley*, 556 *F*.2d at 719, n. 8; *Daly*, 535 *F*.2d at 442; *Paredes–Moya*, 722 *F.Supp.* at 1408; *Gerena*, 695 *F.Supp.* at 1395. For like reasons, we also reject defendants' argument that the erasure of the monitors' hand-held cassette tapes warrants suppression of the subsequently recorded communications. *United States v. Gerena*, 695 *F.Supp.* 1369, 1376–1377 (D.Conn.1988).

Paragraph 1 of the May 7, 1990 order is reversed except to the extent that it orders suppression of the unrecorded conversations. The matter is remanded to the Law Division for all further proceedings.