273 N.J. Super. 147 (1994)
641 A.2d 282
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
JOHN WORTHY, LAMONT BRISCOE, AND WILLIE MAE WORTHY, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued January 5, 1994.
Decided May 10, 1994.
*149 Before Judges KING, HAVEY and ARIEL A. RODRIGUEZ.
Keith M. Warburton, Assistant Prosecutor, argued the cause for appellant (Harris Y. Cotton, Gloucester County Prosecutor, attorney; Mr. Warburton, of counsel and on the brief).
*150 Brian S. O'Malley argued the cause for respondent John Worthy (Mr. O'Malley, on the joint letter brief).
Zulima V. Farber, Public Defender, attorney for respondent Lamont Briscoe (Carrie D. Dingle, Assistant Deputy Public Defender, on the letter brief).
William L. Bowe argued the cause for respondent Willie Mae Worthy (Mr. Bowe, on the joint letter brief).
The opinion of the court was delivered by ARIEL A. RODRIGUEZ, J.S.C. (temporarily assigned).
By leave granted[1] the State appeals two orders suppressing tapes of telephone conversations between defendant and an informant.[2] The conversations were recorded at the direction of a New Jersey law enforcement officer. We conclude that in those circumstances N.J.S.A. 2A:156A-4c requires prosecutorial consent even when a conversation originates outside of New Jersey. We affirm.
Gloucester County Prosecutor's Investigator Michael DiGiorgio, received information from Gordon Todd Skinner, an individual under indictment for distribution of controlled dangerous substances, that defendant intended to expand his narcotics trafficking business to include marijuana. DiGiorgio knew defendant from a prior drug arrest. DiGiorgio instructed Skinner to record any telephone conversations with defendant.
A telephone conversation is a "wire communication" within the meaning of the New Jersey Wiretapping and Electronic Surveillance Control Act, N.J.S.A. 2A:156A-1 to 26 (the wiretapping law), specifically N.J.S.A. 2A:156A-2a. A party to a telephone conversation who tape-records it is deemed to "intercept" a *151 wire communication. N.J.S.A. 2A:156A-2c. Thus, pursuant to N.J.S.A. 2A:156A-4c a telephone conversation may be recorded by a party to it at the direction of a law enforcement officer and provided that the Attorney General, his or her designee or a county prosecutor has determined that there exists a reasonable suspicion that evidence of criminal conduct will be derived from such interception.
At the time, Skinner resided in Oklahoma and DiGiorgio assumed that, because the telephone calls would be originating from there, it was not necessary to obtain the County Prosecutor's prior consent to record them.
Skinner made and recorded several telephone calls to defendant from Oklahoma. He mailed tapes of these conversations (the Oklahoma tapes) to DiGiorgio. In these conversations, Skinner and defendant negotiate a sale to defendant of thirty pounds of marijuana. The conversations concern the price, date and arrangements for delivery of the marijuana to defendant in New Jersey.
At that point, DiGiorgio sought the consent of the Gloucester County Prosecutor to record any telephone conversations which might originate in New Jersey. As a basis for obtaining such consent, he submitted the transcripts of the Oklahoma tapes. DiGiorgio feared that defendant would not come to Gloucester County because he had previously been convicted there of a narcotics violation. Therefore, DiGiorgio arranged for the delivery of the marijuana to take place in Cumberland County and sought the consent of the Acting Cumberland County Prosecutor to record any telephone conversations occurring in that jurisdiction.
On June 12, 1991, at a pre-arranged time and place, Skinner delivered thirty pounds of marijuana to defendant in exchange for money. That illegal transaction was videotaped and several telephone conversations leading up to it were recorded by the Gloucester County Prosecutor's staff (the New Jersey tapes). John *152 Worthy and his companion Lamont Briscoe, were arrested upon leaving the motel room where the exchange had taken place.[3]
A Gloucester County grand jury returned an indictment charging John Worthy, Briscoe and Willie Mae Worthy with conspiracy to distribute marijuana, N.J.S.A. 2C:35-5a(1) and 5b(10); and John Worthy with being the leader of a narcotics trafficking network, N.J.S.A. 2C:35-3.
Defendants filed a motion to suppress the Oklahoma tapes. Judge Lisa granted the motion and ordered a hearing to determine the admissibility of the New Jersey tapes. After an evidentiary hearing, the judge suppressed the New Jersey tapes as well, concluding that they were tainted by the Oklahoma tapes and not admissible under the inevitable discovery exception.
The State raises the following points on appeal: a) the Oklahoma tapes should not be suppressed for failure to obtain prior prosecutorial authorization, b) even if the Oklahoma tapes are inadmissible, the New Jersey tapes were obtained by sufficiently independent means to dissipate any taint, and c) the evidence obtained on the date of arrest is admissible under the inevitable discovery exception to the exclusionary rule.
The legislative history of the New Jersey wiretapping law expresses a strong interest in protecting the privacy of individuals and controlling intrusive police activities. State v. Minter, 116 N.J. 269, 276, 561 A.2d 570 (1989). The federal wiretap act[4] authorizes states to enact wiretap laws of their own in conformity with certain basic requirements. Id. at 275, 561 A.2d 570. N.J.S.A. 2A:156A-4c provides in pertinent part that it is not unlawful under the Act for:

*153 Any person acting at the direction of an investigative or law enforcement officer to intercept a wire or oral communication, where such person is a party to the communication or one of the parties to the communication has given prior consent to such interception; provided, however, that no such interception shall be made unless the Attorney General or his designee or a county prosecutor within his authority determines that there exists a reasonable suspicion that evidence of criminal conduct will be derived from such interception.
We hold that N.J.S.A. 2A:156A-4c requires prosecutorial consent even where the wire or oral communication which is intercepted originates outside of New Jersey if the law enforcement officer directing such interception is acting under the authority of this State. Judge Lisa's conclusions that the New Jersey tapes were tainted by the earlier illegal interception and that the inevitable discovery rule did not apply under these circumstances are amply supported by the credible evidence presented. State v. Johnson, 42 N.J. 146, 162, 199 A.2d 809 (1964).

I
The State's first contention is that because Skinner's interceptions of the Oklahoma conversations were not illegal under the laws of that state, they are admissible in New Jersey. The State argues that under the comparable Oklahoma statute[5] there is no requirement for prosecutorial authorization, and analogizes this case to State v. Minter, 116 N.J. 269, 561 A.2d 570 (1989). In Minter, federal agents following federal law intercepted a communication which was introduced in evidence in a New Jersey prosecution. The Supreme Court held that an interception conducted by federal agents in accordance with the federal wiretap act[6] would be admissible in this state, so long as the participation of New Jersey agents in a joint investigation did not implicate the special requirements of the New Jersey wiretap law. Id. at 271, 561 A.2d 570. The Supreme Court remanded the case for consideration on that issue. Ibid.
*154 The State's analysis is flawed. In this case, there is no involvement by law enforcement agents of other jurisdictions. Skinner was taping the conversations at the request of a New Jersey investigator, concerning a crime being committed in New Jersey and for the purpose of prosecution in New Jersey. The State concedes that DiGiorgio was an "investigative or law enforcement officer" as defined by N.J.S.A. 2A:156A-2f. Thus, his conduct is governed by the New Jersey wiretap law. It is irrelevant that a hypothetical Oklahoma investigator, acting under the laws of that state, would have been permitted to direct Skinner to intercept a communication. That did not occur in this case. In fact, Skinner's actions are not lawful even under Oklahoma law since no one acting under color of law of that state directed the recording of the conversations. Okla. Stat. Ann. Tit. 13, § 176.4(4).
Further, even if DiGiorgio was acting jointly with an Oklahoma investigator, this case is distinguishable from Minter. Federal wiretap law stands in a different situation than the wiretap statutes of other states. As was observed in State v. Minter, supra, 116 N.J. at 278, 561 A.2d 570:
[N]ew Jersey cannot make illegal what federal law makes legal for federal agents. In its sphere of activity the federal law is sovereign, and insofar as it establishes minimum standards it is paramount. We can no more set a higher standard for a federal wiretap then could we set a federal warrant requirement.

II
The State's next contention is that even if the Oklahoma tapes are suppressed, the New Jersey communications, intercepted after the consent of two local prosecutors had been obtained, are not tainted and therefore admissible. In order to analyze this argument, we must first consider the proposition advanced by defendants that N.J.S.A. 2A:156A-21 requires the automatic exclusion of any evidence which is derived from an unlawful interception. The statute provides that any person aggrieved by an unlawfully intercepted communication may file a motion to suppress such evidence and:

*155 The court, upon the filing of such motion by the aggrieved person, shall make available to the aggrieved person or his counsel for inspection such portions of the intercepted communication, or evidence derived therefrom, as the court determines to be in the interests of justice. If the motion is granted, the entire contents of all intercepted wire or oral communications obtained during or after any interception which is determined to be in violation of this act under subsections a., b., or c. above, or evidence derived therefrom, shall not be received in evidence in the trial, hearing or proceeding.

[Ibid.]
Defendants argue that the plain meaning of the statutory language requires that any interception occurring after an unlawful one must be barred. We disagree. There is, "no reason to conclude that the Legislature intended to extend that sanction [suppression of evidence] beyond its usual role by excluding untainted evidence obtained after such a violation has been remedied." State v. Sullivan, 244 N.J. Super. 357, 365, 582 A.2d 835 (App.Div. 1990).
The State maintains that evidence obtained by means that are sufficiently independent to dissipate any taint of illegal police conduct is admissible. State v. Casimono, 250 N.J. Super. 173, 182-183, 593 A.2d 827 (App.Div. 1991), certif. denied, 127 N.J. 558, 606 A.2d 370 (1992), and State v. Johnson, 118 N.J. 639, 653, 573 A.2d 909 (1990). In order to make such a finding a court must weigh three factors: the temporal proximity between the illegal conduct and the challenged evidence; the presence of intervening circumstances; and the flagrancy and purpose of the police misconduct. Johnson, supra, 118 N.J. at 653, 573 A.2d 909.
After an evidentiary hearing, Judge Lisa found that DiGiorgio's actions were a "good faith mistake" and not "misconduct." However, he determined that the prosecutors' consents cannot be considered intervening circumstances since they were based entirely on the information obtained through the unlawful interception of the Oklahoma communications. The judge also found that the time elapsed between the last Oklahoma communication and application for prosecutorial consent was relatively insignificant. There is ample evidence on the record to support *156 these findings. State v. Johnson, supra, 42 N.J. at 162, 199 A.2d 809. We agree with Judge Lisa's conclusion that the taint of the unauthorized Oklahoma interceptions did not dissipate, thus precluding admission of the New Jersey tapes.

III
Lastly, the State contends that the New Jersey tapes come within the narrow, "inevitable discovery" exception to the exclusionary rule. State v. Sugar, 100 N.J. 214, 495 A.2d 90 (1985). In Sugar, the Supreme Court established an inevitable discovery exception as follows:
We require the State to show that (1) proper, normal and specific investigatory procedures would have been pursued in order to complete the investigation of the case; (2) under all of the surrounding relevant circumstances the pursuit of those procedures would have inevitably resulted in the discovery of the evidence; and (3) the discovery of the evidence through the use of such procedures would have occurred wholly independently of the discovery of such evidence by unlawful means.

[Id. at 238, 495 A.2d 90].
This showing must be by clear and convincing evidence. Id. at 240, 495 A.2d 90.
We agree with Judge Lisa when he found that:
I am not satisfied that under proper, normal and specific investigatory procedures [the state] has shown that it would have been able to pursue those procedures and complete the investigation of the particular case. It may have gotten John Worthy on something someday, somewhere, if they continued investigating him, but I am not convinced that they would have ever gotten to this deal with these 30 pounds of marijuana in this hotel room on June 12, 1991 and I am not clearly convinced of that. Likewise, I am not clearly convinced that the other two prongs have been established....
The State has failed to show by clear and convincing evidence the likelihood of a separate investigation that would have led to the detection of defendant's participation in the crimes charged in the indictment.
The orders suppressing evidence obtained as a result of the Oklahoma and New Jersey interceptions are affirmed.
NOTES
[1] The State sought leave to appeal although N.J.S.A. 2A:156A-21 gives it the right to appeal from an order granting such a motion to suppress.
[2] Since the recorded conversations involve primarily defendant John Worthy, unless otherwise indicated the term "defendant" refers to him.
[3] Defendant Willie Mac Worthy was not present at the place of sale. She was heard on one of the recorded conversations discussing with Skinner the weight and quality of the marijuana to be purchased.
[4] 18 U.S.C.A. §§ 2510 to 2521.
[5] Okla. Stat. Ann. tit. 13, § 176.4 (West 1994).
[6] 18 U.S.C.A. §§ 2510 to 2521.