611 A.2d 1164

STATE OF NEW JERSEY v. JOSEPH LAURENCE.

Superior Court of New Jersey
Law Division (Criminal) Union County

Decided August 4, 1992.

*Charles Buckley,* Deputy Attorney General for the State (*Robert J. Del Tufo,* Attorney General for the State of New Jersey).

*Michael Critchley,* for the defendant.

IRONSON, J.S.C.

This matter comes before this court on a motion filed by defendant Joseph Laurence, which seeks to suppress evidence obtained by the State as a result of consensually intercepted communications between himself and a confidential informant.

On June 1, 1988, a State Grand Jury indicted George Fresolone and four other alleged organized crime members for the offenses of racketeering, usury, business of criminal usury, promoting gambling and conspiracy to commit those offenses. As a result of that indictment George Fresolone agreed to become a confidential informant and agreed to provide information to the New Jersey State Police. In August of 1989, Mr. Fresolone consented to wear an onbody monitoring device which would record his conversations with alleged members and/or associates of the organized crime groups with which he was allegedly involved. The Attorney General's designee, pursuant to his authority under *N.J.S.A.* 2A:156A–4(c) periodically authorized the interception of such conversations. These authorizations were in effect from August 1, 1989 until August 26, 1990.

One of the people with whom George Fresolone became involved during his course of cooperation with the State was the defendant Joseph Laurence. On several occasions, Mr. Fresolone, while wearing an on-body monitoring device, met and spoke with the defendant. At least one of those conversa-

tions allegedly involved a request by defendant to obtain a loan at a usurious interest rate, whereupon defendant, after receiving the loan, would lend it to another at an even higher usurious interest rate, thereby earning a profit for himself. Joseph Laurence was thereafter charged with Conspiracy to Commit Criminal Usury, second degree, contrary to *N.J.S.A.* 2C:21–19(a) and Conspiracy to Engage in the Business of Criminal Usury, second degree, contrary to *N.J.S.A.* 2C:21–19(b).

Defendant asserts that the consent form and procedures used to obtain authorization from the Attorney General or his designee to consensually intercept conversations in this matter are tantamount to an administrative rule and therefore are void for not having been promulgated in accordance with the Administrative Procedure Act (APA) *N.J.S.A.* 52:14B–1 *et seq.*. Thus, he contends that all tapes seized pursuant to such procedures should be suppressed. Furthermore, defendant asserts that the procedures which are consistently utilized by the Division of Criminal Justice in this and all other cases to obtain authorization are tantamount to an administrative rule and since they were not promulgated in accordance with the APA they should be declared void. Additionally, defendant argues that the consensually intercepted communications should be suppressed because the orders of authorization were deficient. He asserts that one order was not signed and that others were typed, signed and dated after the Attorney General's designee orally approved such requests. Finally, defendant argues that Deputy Attorney General (DAG) David Brody violated RPC 3.7 since DAG Brody may be needed as a witness in this case which he previously presented to the Grand Jury. Defendant asserts that DAG Brody obtained oral authorization from the Attorney General's designee to intercept communications before he obtained the factual basis for the requests from New Jersey State Police Detective Quirk, and thus DAG Brody may be needed to testify at trial about the circumstances surrounding the granting of the authorization.

■ Initially, this court finds that the consent form and procedures used by the Division of Criminal Justice in this case do not amount to an administrative rule for the reasons hereinafter set forth, and were used merely as a means of memorializing the Attorney General's designee's authorization for the consensual interception. Thus, the consent forms and procedures used did not have to be promulgated in accordance with the APA. It is, therefore, not necessary for this court to determine whether these procedures consistently amount to an administrative rule as argued by defendant.

The Attorney General or his designee may authorize the interception of communications. *N.J.S.A.* 2A:156A–4(c) provides that it shall not be unlawful for:

> Any person acting at the direction of an investigative or law enforcement officer to intercept a wire or oral communication, where such person is a party to the communication or one of the parties to the communication has given prior consent to such interception; provided, however, that no such interception shall be made unless the Attorney General or his designee or a county prosecutor within his authority determines that there exists a reasonable suspicion that evidence of criminal conduct will be derived from such interception.

The Attorney General has set up a procedure which must be followed before authorization to consensually intercept communications will be given. Pursuant to this procedure a factual basis for the requests must be submitted to the Attorney General or his designee. After reviewing the information submitted, the Attorney General or his designee makes a determination as to whether reasonable suspicion exists that evidence of criminal conduct will be derived from such interception. If the Attorney General's designee finds that it so exists and if one party to the communication consents to the interception, the Attorney General's designee will authorize the consensual interception of such conversations. This procedure was used in the case at bar.

After obtaining Mr. Fresolone's consent to the interception, DAG Brody, based upon investigative information received, telephonically read the information to Detective Quirk who verified its accuracy and orally adopted those facts as the bases

for the requests. Subsequently, DAG Brody either telephonically, or in writing, submitted the factual bases to the Attorney General's designee. After reviewing the information submitted and determining that reasonable suspicion existed, periodic authorizations were given, either verbally or in writing, by the Attorney General's designee. These authorizations allowed communications to be intercepted from August 1, 1989 until August 26, 1990.

The Administrative Procedure Act, *N.J.S.A.* 52:14B-1 *et seq.* allows state agencies to adopt administrative rules only upon notice and compliance with *N.J.S.A.* 52:14B-2(e). A rule not adopted in accordance with those procedures is invalid. *N.J.S.A.* 52:14B-4(d). *N.J.S.A.* 52:14B-2(a) provides that a "state agency" or "agency":

> shall include each of the principal departments in the executive branch of the State Government, and all boards, divisions, commissions, agencies, departments, councils, authorities, offices or officers within any such departments now existing or hereafter established and authorized by statute to make, adopt or promulgate rules or adjudicate contested cases, except the office of the Governor.

The Division of Criminal Justice and the Attorney General's Office fall within this definition and, therefore, are state agencies.

*N.J.S.A.* 52:14B-2(e) defines an administrative rule as follows:

> 'Administrative rule' or 'rule' when not otherwise modified, means each agency statement of general applicability and continuing effect that implements or interprets law or policy, or describes the organization, procedure or practice requirements of any agency. The term includes the amendment or repeal of any rule, but does not include: (1) statements concerning the internal management or discipline of any agency; (2) intraagency and interagency statements; and (3) agency decisions and findings in contested cases.

Furthermore, in *Metromedia, Inc. v. Director, Div. of Taxation*, 97 *N.J.* 313, 331, 332, 478 *A.*2d 742 (1984) the New Jersey Supreme Court set forth the test for determining when agency action amounts to an administrative rule. The Court stated:

> [A]n agency determination must be considered an administrative rule when all or most of the relevant features of administrative rules are present and preponderate in favor of the rule-making process. Such a conclusion would be

warranted if it appears that the agency determination, in many or most of the following circumstances, (1) is intended to have wide coverage encompassing a large segment of the regulated or general public, rather than an individual or a narrow select group; (2) is intended to be applied generally and uniformly to all similarly situated persons; (3) is designed to operate only in future cases, that is, prospectively; (4) prescribes a legal standard or directive that is not otherwise expressly provided by or clearly and obviously inferable from the enabling statutory authorization; (5) reflects an administrative policy that (i) was not previously expressed in any official and explicit agency determination, adjudication or rule, or (ii) constitutes a material and significant change from a clear, past agency position on the identical subject matter; and (6) reflects a decision on administrative regulatory policy in the nature of the interpretation of law or general policy. These relevant factors can, either singly or in combination, determine in a given case whether the essential agency action must be rendered through rule-making or adjudication.

*Id.* at 331, 332, 478 *A.*2d 742.

The use of the consent form and procedure does not amount to an administrative rule under this test. First, the use of the consent form is not intended to have wide coverage encompassing a large segment of the regulated or general public. Rather, its use is limited to the Attorney General, or his designee, and the 21 county prosecutors who use the forms to authorize consensually intercepted communications. Second, the procedure does not prescribe a legal standard or directive that is not otherwise expressly provided by or clearly obviously inferable from the enabling statutory authorization. *N.J.S.A.* 2A:156A–4(c) clearly sets forth the legal standard for authorizing a consensually intercepted communication to be "a reasonable suspicion". The authorization order uses the same standard. The Attorney General's designee certifies, when signing the authorization, that:

I have reviewed the foregoing request for authorization to conduct a consensual interception and have concluded that there exists *a reasonable suspicion* that evidence of criminal conduct will be derived from the interception. I therefore approve the consensual interception subject to the following conditions. (emphasis added)

Third, the use of the consent form does not reflect an administrative policy that (1) was not previously expressed in any official and explicit agency determination, adjudication or rule, or (ii) constituted a material and significant change from a

clear, past agency position on the identical subject matter. Fourth, the procedure does not reflect a decision on administrative regulatory policy in the nature of the interpretation of law or general policy. The procedure itself does not determine whether reasonable suspicion exists, instead the procedure is only a method used to memorialize the finding of reasonable suspicion.

This finding gains further support from *State v. Parisi*, 181 *N.J.Super.* 117, 436 *A.*2d 948 (App.Div.1981) where the Appellate Division stated:

> [T]he [trial] judge read into *N.J.S.A.* 2A:156A–4(c) requirements that it does not contain. There is no indication that the Legislature intended to circumscribe this expressly permitted method of intercepting communications to any greater degree than the single conditions imposed in *N.J.S.A.* 2A:156A–4(c). *State v. Schultz*, 176 *N.J.Super.* 65 [422 *A.*2d 105] (App.Div.1980). There is nothing in *N.J.S.A.* 2A:156A–4(c) which mandates that the prosecutor must particularize his reasons for finding reasonable suspicion to exist. *As a matter of fact, although a written memorialization of reasonable suspicion on the part of the prosecutor may be desirable for the purpose of proof, the statute does not even appear to require that this determination be in writing.* Although *N.J.S.A.* 2A:156A–8 requires that there be authorization in writing for a wiretap application there is no similar requirement for authorization for a consensual interception. (emphasis added)

*Id.* at 120, 436 *A.*2d 948.

■ Even assuming that the use of the consent forms and procedures amounts to an administrative rule, they would not be invalid because they fall within the intra-agency exception to the APA and thus do not have to be preceded by notice and a hearing. An intra-agency statement is: "(1) a communication between agency members that (2) does not have a substantial impact on (3) the rights or legitimate interests of the regulated public." *Woodland Private Study Group v. State*, 109 *N.J.* 62, 75, 533 *A.*2d 387 (1987). The Court in *Woodland* noted:

> Where a legally countenanced *right* of a party is threatened by internal communication of an agency, rulemaking procedures must be followed. What constitutes an interest that cannot be abridged without rulemaking procedure is not easily defined. The *interest* alleged must ultimately be legitimate, of justifiable concern. Many internal agency memoranda, for example, relate to prosecutorial discretion. Given limited resources, an agency must make important choices regarding which actions of the regulated public it should monitor

or prosecute. In a real sense these communications can have a substantial impact on the regulated public: the memorandum may ultimately determine who is prosecuted, and knowledge of the communication might facilitate illegal conduct. *The regulated public cannot be said to have a legitimate interest in frustrating the agency's enforcement mechanism and thus public hearing and notice need not precede the issuance of the internal memorandum.* (emphasis added).

The inquiry is whether an agency's interest in streamlined procedure is outweighed by the importance of the interests that are affected. Generally where the interest implicated is legitimate the balance will tilt in favor of notice and hearing for internal actions that have a substantial impact on that interest.

*Id.* at 74, 75, 533 *A.*2d 387.

The consent form in question is a communication between agency members which although it may help to determine who is monitored and ultimately prosecuted, does not have a substantial impact on the rights or legitimate interests of the regulated public. The forms merely show that the authorizations to intercept communications were given. In no way does the use of these forms govern the Attorney General's designee's determination as to when reasonable suspicion exists.

■ Defendant's contention that the consensually intercepted communications should be suppressed because the orders of authorization were deficient lacks merit. First, all of the orders of authorization were approved; the State inadvertently provided defendant with an unsigned copy of the June 12, 1990 order of authorization, but has since provided the court with a signed copy of the authorization. Second, the fact that several authorizations were orally approved and later reduced to writing does not invalidate the fact that approval was given. In fact, it was not even necessary for the Attorney General or his designee to put his authorization in writing. See *State v. Parisi*, 181 *N.J.Super.*, *supra* at p. 120, 436 *A.*2d 948 which held that neither the authorization itself, nor the prosecutor's basis for a finding of reasonable suspicion need be in writing.

This Court rejects defendant's contention that DAG Brody obtained authorization to intercept communications before obtaining Detective Quirk's oral adoption of the factual basis for the requests. It is simply inconceivable to believe that the

Attorney General's designee would authorize an interception without being apprised of the factual basis for it. The Attorney General's designee had the opportunity to review the factual basis for the requests when they were telephonically read to him. It is of no consequence that, in certain circumstances, the facts which were read to the designee were based upon Detective Quirk's oral adoption and not based upon a written certification of Detective Quirk, as a written certification is not required by *N.J.S.A.* 2A:156–4(c).

██ Furthermore, this court finds that DAG Brody, who presented the indictment to the Grand Jury did not violate RPC 3.7. RPC 3.7 states in part:

(a) A lawyer shall not act as an advocate at a trial in which the lawyer is likely to be a necessary witness except where:

(1) the testimony relates to an uncontested issue;

(2) the testimony relates to the nature and value of legal services rendered in the case; or

(3) disqualification of the lawyer would work substantial hardship on the client.

It is not likely that DAG Brody will be a witness in this case. There are two reasons for this. First, DAG Brody did not have first hand knowledge of the facts contained in the requests for authorization. DAG Brody merely acted as a messenger when he telephonically read to the designee the factual basis for the request. Later DAG Brody signed several certifications which set forth in writing the information which was transmitted to the designee. These certifications stated in part:

I telephonically read the foregoing Factual Basis for Request in its entirety to Detective Edward Quirk of the New Jersey State Police, Intelligence Bureau, following which he certified to its accuracy and adopted it as his own. I certify that the foregoing statements made by me are true. I am aware that if they are willfully false, I am subject to punishment.

By signing these certifications, DAG Brody did not attest to the accuracy of the facts contained in the Factual Basis for Requests in support of the application for authorization. Instead his certifications merely show that he telephonically read the Factual Basis For Requests in their entirety to Detective Quirk, who then certified its accuracy and adopted it as his own. If

any of the facts in question are disputed, Detective Quirk would be the person who had first hand knowledge and he would be the person to testify.

Second, DAG Brody is not needed to testify about the fact that he received oral authorization for the interceptions. The signed authorization, itself, if properly authenticated, is proof of the fact that authorization was given. *State v. Parisi*, 181 *N.J.Super., supra,* 436 *A.*2d 948.

Accordingly, for the aforementioned reasons, the motion to suppress is denied.