# RECORD IMPOUNDED

NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3690-22

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

CHRISTOPHER W. BARCLAY,
a/k/a BARCLAY CHRISTOPH,

    Defendant-Appellant.

_____

<div style="border:1px solid black">

**APPROVED FOR PUBLICATION**

**August 20, 2024**

**APPELLATE DIVISION**

</div>

Argued July 16, 2024 – Decided August 20, 2024

Before Judges Susswein, Chase and Perez Friscia.

On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Indictment No. 17-06-0969.

Kayla Elizabeth Rowe, Designated Counsel, argued the cause for appellant (Jennifer Nicole Sellitti, Public Defender, attorney; Kayla Elizabeth Rowe, on the brief).

William Kyle Meighan, Supervising Assistant Prosecutor, argued the cause for respondent (Bradley D. Billhimer, Ocean County Prosecutor, attorney; William Kyle Meighan, on the brief).

The opinion of the court was delivered by

SUSSWEIN, J.A.D.

This appeal presents a novel statutory construction question under the New Jersey Wiretapping and Electronic Surveillance Control Act (Wiretap Act or Act), N.J.S.A. 2A:156A-1 to -37. Pursuant to N.J.S.A. 2A:156A-4(c) (Section 4(c)), law enforcement officers may intercept and record a telephonic communication when a party to the conversation allows them to listen in on the phone call. Recordings made under this provision are known as "consensual interceptions," referring to the prior consent that must be given by the person who is a party to the telephonic communication and who is acting at the direction of a law enforcement officer. While a consensual interception does not require prior judicial approval in the form of a wiretap order, Section 4(c) requires police to obtain the prior approval of the Attorney General or designee, or a county prosecutor or designee. In this appeal, we address whether that prior approval must be in writing.

Defendant Christopher Barclay appeals from an April 25, 2023 Law Division order issued by Judge Guy P. Ryan denying his petition for post-conviction relief (PCR) without an evidentiary hearing. In 2018, defendant was convicted by a jury on multiple counts of aggravated sexual assault and endangering the welfare of a child in connection with his sustained sexual

abuse of W.B.[1]  He contends both his trial counsel and direct-appeal counsel rendered ineffective assistance by failing to argue detectives violated the Wiretap Act when they recorded a telephone conversation between defendant and W.B.

Defendant does not dispute W.B. consented to the law enforcement interception of the telephone conversation.  Nor does defendant dispute the detectives directing the call obtained prior authorization from an assistant prosecutor designated by the county prosecutor to grant such approval. Rather, defendant contends the assistant prosecutor's prior approval was invalid because it was not provided to the detectives in writing, thus requiring suppression of the recording.[2]

We conclude that nothing in the plain text, legislative history, or case law interpretation of the Wiretap Act requires prior prosecutorial approval of consensual interceptions be made in writing.  We decline to add any such procedural requirement to the statutory framework.  Because defendant's

---

[1]  We use initials to protect the victim's privacy.  R. 1:38-3(c)(9).

[2]  We emphasize at the outset that the issue before us is not whether and how prosecutorial authorization for a consensual interception should be documented after the fact.  Rather, the statutory construction question presented in this appeal is whether Section 4(c) requires the approval be made in writing before the interception is initiated.

A-3690-22

ineffective assistance of counsel claim is premised on a misinterpretation of the Wiretap Act, we affirm the denial of his PCR petition.

I.

We discern the following pertinent facts and procedural history from the record. In 2016, W.B. reported to the Ocean County Prosecutor's Office (OCPO) that defendant sexually assaulted her on numerous occasions between 2005 and 2012 when she was between six and twelve years old. Following an investigation, defendant was charged in a nine-count indictment with first-degree aggravated sexual assault, N.J.S.A. 2C:14- 2(a)(1) (counts one, four, and seven); second-degree sexual assault, N.J.S.A. 2C:14-2(b) (counts two, five, and eight); and second-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a)(1) (counts three, six, and nine).

On February 22, 2018, the trial judge denied defendant's motion to exclude the consensual telephonic recording at issue in this appeal on the grounds of relevance. The defense did not argue the recording should be suppressed because of a Wiretap Act violation.

Defendant was tried before a jury over the course of five days in February and March 2018. The jury found defendant guilty on all counts.[3] On

---

[3] Because the lawfulness of defendant's sentence is not raised in his PCR petition, we need not elaborate on the specific prison terms imposed on each

direct appeal, we affirmed defendant's convictions but remanded for the trial court to provide further explanation for its findings with respect to the relevant aggravating sentencing factors.

In June 2022, defendant filed the present PCR petition. On April 25, 2023, Judge Ryan issued a twenty-nine-page written opinion denying the petition. This appeal follows.

Defendant raises the following contention for our consideration:

> TRIAL AND APPELLATE COUNSEL'S FAILURE TO CHALLENGE THE ADMISSION OF THE RECORDED CONVERSATION BASED ON THE REQUIREMENTS OF THE NEW JERSEY WIRETAP ACT CONSTITUTED INEFFECTIVE ASSISTANCE OF COUNSEL.

II.

We preface our analysis by acknowledging the legal principles governing PCR appeals. PCR serves the same function as a federal writ of habeas corpus. State v. Preciose, 129 N.J. 451, 459 (1992). When petitioning for PCR, a petitioner must establish, by a preponderance of the credible evidence, that he or she is entitled to the requested relief. Ibid. To meet this burden, the petitioner must allege and articulate specific facts, "which, if

_____

count. The details of the sentence are discussed at length in our direct appeal opinion. See State v. C.B., No. A-5090-17 (App. Div. May 1, 2020) (slip op. at 15).

A-3690-22

believed, would provide the court with an adequate basis on which to rest its decision." State v. Mitchell, 126 N.J. 565, 579 (1992).

Both the Sixth Amendment of the United States Constitution and Article 1, Paragraph 10 of the State Constitution guarantee the right to effective assistance of counsel at all stages of criminal proceedings. See Strickland v. Washington, 466 U.S. 668, 686 (1984); see State v. Fritz, 105 N.J. 42, 58 (1987). In addressing an ineffective assistance of counsel claim raised in a petition for PCR, New Jersey courts follow the two-part test articulated in Strickland, 466 U.S. at 687. See Fritz, 105 N.J. at 58. "First, the defendant must show that counsel's performance was deficient." State v. Gideon, 244 N.J. 538, 550 (2021) (quoting Strickland, 466 U.S. at 687). "Second, the defendant must have been prejudiced by counsel's deficient performance." Ibid. (quoting Strickland, 466 U.S. at 687).

To meet the first prong of the Strickland/Fritz test, a defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. Reviewing courts indulge in "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." Id. at 689. "A court evaluating a claim of ineffective assistance of counsel must avoid second-guessing defense counsel's tactical

6

decisions and viewing those decisions under the 'distorting effects of hindsight.'" State v. Marshall, 148 N.J. 89, 157 (1997) (quoting Strickland, 466 U.S. at 689). Furthermore, to satisfy the Strickland/Fritz standard when an ineffective assistance claim is based on the failure to file a suppression motion, the defendant must establish that the underlying claim is meritorious. See State v. O'Neal, 190 N.J. 601, 618-19 (2007) (quoting State v. Fisher, 156 N.J. 494, 501 (1998)).

The second Strickland prong requires the defendant show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687. Stated differently, counsel's errors must create a "reasonable probability" that the outcome of the proceedings would have been different if counsel had not made the errors. Id. at 694. This "'is an exacting standard.'" Gideon, 244 N.J. at 551 (quoting State v. Allegro, 193 N.J. 352, 367 (2008)). "Prejudice is not to be presumed," but must be affirmatively proven by the defendant. Ibid. (citing Strickland, 466 U.S. at 693).

The same Strickland/Fritz test applies to ineffective assistance of counsel claims asserted against appellate counsel. See State v. Gaither, 396 N.J. Super. 508, 513 (App. Div. 2007). Appellate counsel "need not advance every argument, regardless of merit, urged by the appellant," Evitts v. Lucey,

7                                                                                    A-3690-22

469 U.S. 387, 394 (1985), but "should bring to the court's attention controlling law that will vindicate [the appellant]'s cause." State v. O'Neil, 219 N.J. 598, 612 (2014). Failure to do so constitutes ineffective assistance only if there is a "reasonable probability" that the outcome of the appeal would have been different. Id. at 611-12. Thus, to prove ineffective assistance of appellate counsel, a defendant must prove an underlying claim to relief is meritorious. State v. Morrison, 215 N.J. Super. 540, 547-51 (App. Div. 1987).

Short of obtaining immediate relief, a defendant may show that an evidentiary hearing is warranted to develop the factual record in connection with an ineffective assistance claim. Preciose, 129 N.J. at 462-63. However, "[i]f the court perceives that holding an evidentiary hearing will not aid the court's analysis of whether the defendant is entitled to [PCR] . . . then an evidentiary hearing need not be granted." Marshall, 148 N.J. at 158 (citations omitted). The PCR court should grant an evidentiary hearing only when "(1) the defendant establishes a prima facie case in support of PCR; (2) the court determines that there are disputed issues of material fact that cannot be resolved by review of the existing record; and (3) the court determines that an evidentiary hearing is required to resolve the claims asserted." State v. Vanness, 474 N.J. Super. 609, 623 (App. Div. 2023) (citing State v. Porter, 216 N.J. 343, 354 (2013)).

III.

A.

As originally adopted in 1968, the Wiretap Act neither prohibited nor regulated consensual interceptions.  See State v. Worthy, 141 N.J. 368, 382 (1995) (citing L. 1968, c. 409, § 4(b)).  In 1975, the Legislature amended the Act "to provide for prosecutorial oversight and prior approval of consensual interceptions."  Ibid. (citing L. 1975, c. 131, § 4(c); N.J.S.A. 2A:156A-4(c)).  The relevant provision adopted in 1975 read in pertinent part:

> Any person acting at the direction of an investigative or law enforcement officer to intercept a wire or oral communication, where such person is a party to the communication or one of the parties to the communication has given prior consent to such interception; provided, however, that no such interception shall be made unless the Attorney General or his designee or a county prosecutor within his authority determines that there exists a reasonable suspicion that evidence of criminal conduct will be derived from such interception.
>
> [L. 1975, c. 131, § 4(c); see Worthy, 141 N.J. at 382-84.]

Our Supreme Court in Worthy explained that by adopting the 1975 amendment to the Wiretap Act,

> the Legislature determined not to leave police officers to their unfettered discretion, fearing that too much investigative latitude might lead to abuses of privacy. Accordingly, it directed that the police must get prior approval from the Attorney General or from a [c]ounty

9

[p]rosecutor before undertaking a consensual wiretap in order to assure that privacy interests would not be needlessly compromised or abused.

[Id. at 379 (citing Senate Jud. Comm., Statement to Senate Bill No. 1417, at 1 (May 19, 1975)).]

That provision was substantially revised in 1999. See L. 1999, c. 151, §3. The 1999 version, which was in effect when the detectives asked W.B. to place the recorded telephone call to defendant, provides "[i]t shall not be unlawful under this act for:

> c. Any person acting at the direction of an investigative or law enforcement officer to intercept a wire, electronic or oral communication, where such person is a party to the communication or one of the parties to the communication has given prior consent to such interception; provided, however, that no such interception shall be made without the prior approval of the Attorney General or his designee or a county prosecutor or his designee;
>
> [See ibid.; see State v. K.W., 214 N.J. 499, 509-11 (2013).]

To provide context for this provision, we note the Act makes it a third-degree crime for any person, including but not limited to a law enforcement officer, to purposely intercept a wire, electronic, or oral communication "[e]xcept as otherwise specifically provided in [the] [A]ct." N.J.S.A. 2A:156A-3. N.J.S.A. 2A:156A-4 lists several exceptions to the Act's general rule that it is a crime to intercept a wire, electronic, or oral communication

without first obtaining a wiretap order—essentially a specialized form of a judicially-approved warrant—from a specially-designated Superior Court judge. See N.J.S.A. 2A:156A-8, -9, -10. As noted, the specific exception codified in Section 4(c) explains when consensual interceptions are lawful.

B.

We begin our interpretive analysis of Section 4(c) by acknowledging that the fundamental goal of statutory construction is to ascertain the Legislature's intent. See State v. Reiner, 180 N.J. 307, 311 (2004). Examination of the subject statute's plain language is the starting point, see State v. Butler, 89 N.J. 220, 226 (1982), and sometimes the ending point as well. In interpreting the plain language of the Wiretap Act, we recognize that the requirements imposed on police and prosecutors under the Act must be strictly adhered to, and, therefore, those requirements are strictly construed. State v. Cerbo, 78 N.J. 595, 604 ("[T]he Wiretap Act constitutes an 'intrusion into individual rights of privacy' and should be strictly interpreted and meticulously enforced."); see also In re Wire Commc'n, 76 N.J. 255, 260 (1978) ("Wiretap statutes implicating as they do an intrusion into individual rights of privacy, constitutionally and legislatively recognized, should generally be strictly construed.").

11

In Worthy, our Supreme Court made clear that the overarching principle of strict construction applies to the provision of the Act governing consensual interceptions and not just to the provisions governing interceptions requiring judicial approval. 141 N.J. at 379. The Court explained, "[t]he powerful privacy concerns generated by the spectre of government-directed wiretapping exist even with respect to the consensual interception of such communications." Ibid. The Court added, "[i]n imposing a requirement of prior prosecutorial approval before the police may direct a 'consensual' wiretap, the Legislature sought to safeguard personal privacy." Ibid.

That said, the rule of strict construction we must apply in all Wiretap Act cases does not alter the fact that what we are strictly construing is the language of the Act itself. We reiterate and stress that when interpreting the meaning of a statute, we look first to the Legislature's plain language. State v. Gandhi, 201 N.J. 161, 176-77 (2010) ("In most instances, the best indicator of [legislative] intent is the plain language chosen by the Legislature."); see also State v. Smith, 197 N.J. 325, 332-33 (2009). Moreover, "[i]f the plain language leads to a clear and unambiguous result, then our interpretive process is over." Gandhi, 201 N.J. at 177 (quoting Richardson v. Bd. of Trs., Police & Firemen's Ret. Sys., 192 N.J. 189, 195 (2007)).

In this instance, the plain text of Section 4(c) does not state that prior prosecutorial approval must be in writing. On the contrary, the Act is silent on the means of communicating prosecutorial approval. That fact is especially salient in our analysis of defendant's PCR claim. Defendant asks us to read into the Act words the Legislature did not choose to include, and to engraft a procedural requirement the Legislature did not choose to impose. We have no basis upon which to grant defendant's request. Just as reviewing courts should not ignore or render superfluous words chosen by the Legislature,[4] they should not add words to a statute to change its meaning. See DiProspero v. Penn, 183 N.J. 447, 492 (2005) ("We cannot 'write in an additional qualification which the Legislature pointedly omitted in drafting its own enactment,' or 'engage in conjecture or surmise which will circumvent the plain meaning of the act.'") (citations omitted).

We note this is not a situation where additional qualifying language is needed to render the Wiretap Act constitutional. Cf., State v. Burkert, 231 N.J. 257, 284-85 (2017) (construing the harassment statute, N.J.S.A. 2C:33-4(c), to require proof of "repeated communications directed at a person that reasonably

---

[4] It is a well-accepted maxim of statutory construction that courts "strive for an interpretation that . . . does not render any [statutory] language inoperative, superfluous, void[,] or insignificant." Sanchez v. Fitness Factory Edgewater, LLC, 242 N.J. 252, 261 (2020) (quoting G.S. v. Dep't of Hum. Servs., 157 N.J. 161, 172 (1999)).

put that person in fear for his safety or security" to address First Amendment concerns).  Indeed, defendant does not contend the Wiretap Act as written is unconstitutional.

Furthermore, even putting aside the general principle that we do not look to extrinsic aids to divine legislative intent when a statute's language is unambiguous, see DiProspero, 183 N.J. at 492-93, nothing in the legislative history of any version of Section 4(c) suggests the Legislature meant to require prior prosecutor approval of consensual interceptions be in writing.

We deem it to be especially noteworthy that the plain text of Section 4(c) stands in stark contrast to the plain text of the Wiretap Act section governing the internal law enforcement procedure for getting approval to apply to a wiretap judge for an interception order, N.J.S.A. 2A:156A-8.  In pertinent part, that section provides:

> The Attorney General, county prosecutor or a person designated to act for such an official . . . may authorize, in writing, an ex parte application to a judge designated to receive the same for an order authorizing the interception of a wire, or electronic or oral communication by the investigative or law enforcement officers or agency having responsibility for an investigation when such interception may provide evidence of the commission of [specified crimes].
>
> [N.J.S.A. 2A:156A-8 (emphasis added).]

A-3690-22

That provision confirms the Legislature knows how to specify when Attorney General/county prosecutor/designee prior approval must be in writing but chose not to include that requirement with respect to approving a request to conduct a consensual interception.

C.

The conclusion that prior prosecutorial approval for consensual interceptions need not be in writing is supported by our opinion in State v. Parisi, 181 N.J. Super. 117 (App. Div. 1981)—a case decided under the 1975 version of Section 4(c).  As noted, the earlier version of Section 4(c) required the Attorney General or county prosecutor to determine "that there exists a reasonable suspicion that evidence of criminal conduct will be derived from such [consensual] interception."  See id. at 119.

In Parisi, the trial judge found the consensual interceptions were unlawful because "the authorization form utilized [by the assistant prosecutor] failed to include any specific reason for the interception or any factual statement upon which the prosecutor could have reached the conclusion that there existed a 'reasonable suspicion that evidence of criminal conduct will be derived from such interception.'"  Ibid.  On appeal, we reversed the trial judge's suppression ruling, holding:

> In so finding the judge read into N.J.S.A. 2A:156A-4(c) requirements that it does not contain.  There is no

indication that the Legislature intended to circumscribe this expressly permitted method of intercepting communications to any greater degree than the single condition imposed in N.J.S.A. 2A:156A-4(c). State v. Schultz, 176 N.J. Super. 65 (App. Div. 1980). There is nothing in N.J.S.A. 2A:156A-4(c) which mandates that the prosecutor must particularize his reasons for finding reasonable suspicion to exist.

[Id. at 120.]

Pertinent to the present appeal, we commented:

As a matter of fact, although a written memorialization of reasonable suspicion on the part of the prosecutor may be desirable for the purpose of proof, the statute does not even appear to require that his determination be in writing. Although N.J.S.A. 2A:156A-8 requires that there be authorization in writing for a wiretap application, there is no similar requirement for authorization for a consensual interception.

[Ibid. (emphasis added).]

Relatedly, the State also cites published Law Division opinions that follow the reasoning in Parisi. See State v. Bisaccia, 251 N.J. Super. 508, 512 (Law Div. 1991); see also State v. Laurence, 259 N.J. Super. 225, 233 (Law Div. 1992). Like Parisi, these cases were decided before the 1999 revisions to Section 4(c).

That circumstance lends support to our interpretation of the current version of Section 4(c) because "'the Legislature is presumed to be aware of

16

judicial construction of its enactments.'" DiProspero, 183 N.J. at 494 (quoting N.J. Democratic Party, Inc. v. Samson, 175 N.J. 178, 195 n.6 (2002)). If the Legislature disagreed with Parisi, Bisaccia, and Laurence on whether prior prosecutorial approval should be in writing, it certainly had the opportunity to include such a requirement in its 1999 revisions. The Legislature did not do that. Indeed, rather than add any new prerequisites, the 1999 amendment deleted the reasonable-suspicion requirement and expanded the list of officials who could give prior approval by authorizing county prosecutors to delegate their approval authority to designees.

D.

We next address defendant's contention that an in-writing approval requirement follows in the wake of our Supreme Court's K.W. decision. Defendant's reliance on K.W. is misplaced. Indeed, if anything, K.W. supports our conclusion because—like the text of Section 4(c)—the Court's decision makes no mention of an in-writing requirement.

In K.W., the Court addressed whether a telephone conversation intercepted by law enforcement officials in violation of Section 4(c) requires suppression of the recorded conversation. Id. at 501. In that case, without first obtaining the approval required by Section 4(c), "an assistant prosecutor and detective proceeded with a consensual intercept of a conversation between

a cooperating child-victim, who allegedly had been sexually assaulted by her father, and the defendant-father." Ibid. The Court accepted the trial judge's factual finding that an assistant prosecutor designated to authorize a consensual intercept did not approve the interception until after it began. Id. at 508. "In light of that finding," the Court noted, "there is no question that the command of N.J.S.A. 2A:156A-4(c) has been violated. The preeminent issue before us is whether the violation demands suppression of the conversation that was intercepted contrary to the dictates of the consensual-intercept statute." Ibid.

Building on the foundation laid decades earlier in Worthy, the K.W. Court rejected the State's contention "that the removal of the reasonable-suspicion requirement in [S]ection 4(c) [accomplished by the 1999 amendment] suggests that the Legislature intended to loosen the dictate of strict compliance with the prior-prosecutorial-approval requirement for consensual intercepts." Id. at 512. The Court added, the State's loosening "argument ignores the plain and simple fact that the addition of the 'prior approval' language strengthens rather than diminishes the Legislature's expectation of the proper prosecutorial oversight before the directing of a consensual intercept." Ibid. In view of the statutory violation, the Court held that suppression was required under the Wiretap Act's suppression remedy

18                                                          A-3690-22

codified at N.J.S.A. 2A:156A-21, rejecting the State invitation to read a good-faith exception into the Act.  Id. at 511, 513.

The case before us is markedly distinguishable from K.W. on a critical fact.  As defendant acknowledges, here, the designated assistant prosecutor authorized the consensual interception before the recorded conversation.  The K.W. Court had no occasion to suggest, much less hold, that prior authorization by a properly designated assistant prosecutor would have been unavailing had it been oral rather than written.  The K.W. Court focused solely on the timing of the consensual-intercept approval, not the method by which it was communicated to the detective.

E.

Finally, as an intermediate appellate court, we are in no position to add a procedural requirement to the Wiretap Act the Legislature chose not to impose.  See DiProspero, 183 N.J. at 492.  It is not our place, for example, to balance any incremental additional privacy safeguards that might result from an in-writing approval requirement against the practical implementation issues that could arise during swiftly evolving criminal investigations.  It is conceivable, for example, that a victim or cooperating witness who is willing to place a phone call to a target at law enforcement's request might change their mind if that call had to be delayed pending receipt of written rather than oral approval.

In <u>Worthy</u>, our Supreme Court took note that the Legislature "acknowledged that completely effective law enforcement might be incompatible with a requirement of obtaining a court order before directing the placement of a consensual wiretap."  141 N.J. at 379.  This shows the Court and the Legislature recognized the need to consider the practical realities of the consensual interception approval process.  Relatedly, as we have noted, the 1999 amendment to Section 4(c) significantly expanded the potential number of prosecutorial officials who might give consensual-interception approval.  Presumably, the Legislature intended to expedite the internal law enforcement approval process by that revision.

The point simply is that the limited record in this appeal does not permit us to account for the practical burdens that would be imposed if prosecutorial approval had to be communicated to detectives in writing.  And in any event, that is precisely the type of balancing of competing pragmatic and policy interests that is properly left for others to decide.  Cf. <u>State v. Rodriquez</u>, 459 N.J. Super. 13, 25 (App. Div. 2019) ("[I]t is not our role as an intermediate appellate court to engraft upon [a New Jersey Supreme Court decision] an exception that was not expressed in the Court's detailed majority opinion.") (citing <u>State v. Hill</u>, 139 N.J. Super. 548, 551 (App. Div. 1976)).

A-3690-22

In State v. Schultz, we held the "sealing" requirement under N.J.S.A. 2A:156A-14 only applies to judicially authorized intercepts—not consensual-interception recordings.  176 N.J. Super. 65, 67-68 (App. Div. 1980).  "[W]e are certain," we held, "the Legislature did not intend to circumscribe the express exclusion from the operation of the [Wiretap Act] to any greater degree than by the one condition it imposed."  Ibid.

Here, as well, we are certain the Legislature did not intend to impose procedural requirements regarding prosecutorial approval of consensual interceptions other than the two conditions expressly articulated in the statutory text: (1) the approval be made by a person designated by the Attorney General or county prosecutor, and (2) such approval be given prior to initiating the consensually-intercepted telephonic communication.  The record shows the OCPO dutifully complied with both requirements.

IV.

In sum, defendant has failed to establish a prima facie case of ineffective assistance under either prong of the Strickland/Fritz test.  "It is not ineffective assistance of counsel for defense counsel not to file a meritless motion." O'Neal, 190 N.J. at 619.  So too, defendant has failed to make a prima facie case of ineffective assistance by appellate counsel.  Morrison, 215 N.J. Super. at 547-51.

Nor is there a basis for remanding for an evidentiary hearing. The issue presented in this appeal is based entirely on a dispute as to the governing law, not the relevant facts. Defendant's concession that a properly designated assistant prosecutor gave prior approval for the consensual interception confirms there is no factual dispute that must be resolved through further factfinding by the PCR court. See Vanness, 474 N.J. Super. at 623.

To the extent we have not specifically addressed them, any remaining arguments raised by defendant lack sufficient merit to warrant discussion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION